ROSALIND M. STIFT, Plaintiff-Appellant, v. ROSEMARY LIZZADRO, Defendant-Appellee.

First District (1st Division)    No. 1—04—2094

Opinion filed December 5, 2005.

Kevin P. Justen, of Clark, Justen & Zucchi, Ltd., of Rockford, for appellant.

Travis G. Maisel, of Oltman & Maisel, P.C., of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff-appellant, Rosalind M. Stift, brought suit against defendant-appellee Rosemary Lizzadro, for injuries from an automobile collision allegedly caused by Lizzadro's negligence. Lizzadro denied any negligence and alleged that Stift's injuries were caused by her own negligence. The case was tried before a jury, which returned a verdict in favor of Stift and awarded $40,000 for pain and suffering, $0 for loss of normal life experienced, $0 for loss of normal life reasonably certain to be experienced in the future, $26,646.96 for medical expenses, and $0 for disfigurement. However, the jury also found that Stift was 35% contributorily negligent and her award was decreased by that percentage. Stift raises three issues on appeal: whether the trial court erred in refusing to submit an instruction to the jury regarding future pain and suffering, whether the trial court's denial of her motion for a new trial on the issue of damages was an abuse of discretion, and whether the jury's determination that she was 35% at fault was against the manifest weight of the evidence. For the reasons that follow, we affirm.

## I. BACKGROUND

There is no dispute that on May 21, 2000, a collision between an automobile driven by Stift and one driven by Lizzadro occurred in Oak Brook, Illinois. Stift was traveling east in the left-most lane of the three eastbound lanes of 22nd Street near Jorie Boulevard. Lizzadro was traveling north on Jorie Boulevard, turned right onto eastbound 22nd Street, and then crossed through the middle lane and into the left lane where the collision occurred.

At trial, Lizzadro testified that she came to a complete stop at a

red light at the intersection of Jorie Boulevard and 22nd Street, that she looked left, did not see any oncoming traffic, and then proceeded to make a right turn onto 22nd Street. She further stated that after entering the right lane of 22nd Street she did not see any traffic and then crossed through the center lane and into the left lane. She then stated that she was going straight in the left lane when she heard and felt three successive impacts near the back of her car. Lizzadro then looked back and saw a car rolling over the median.

Stift testified that she was traveling in the left lane of 22nd Street, that as she approached the intersection with Jorie Boulevard the traffic light facing her was red and she took her foot off the accelerator, that before she got to the intersection her light turned green, and that she then began to accelerate through the intersection, reaching a speed of approximately 40 miles per hour. Stift further stated that she did not think Lizzadro stopped at the intersection of Jorie Boulevard and 22nd Street and that Lizzadro accelerated across two lanes into her lane. Stift also stated that the rear left side of Lizzadro's car collided with the front of her car. Stift next testified that she did not apply her breaks until after the impact, when her car ran into the raised median and started to roll.

Officer Mark Kozlowski testified that he came upon the scene of the accident after seeing the lights of Stift's car facing eastbound on westbound 22nd Street. He stated that there was extensive damage to Stift's car and that there was damages to the rear and left corner side of Lizzadro's car. According to Kozlowski, he spoke with Lizzadro and she was unable to tell him the color of the light on Jorie Boulevard before she turned onto 22nd Street. Officer Kozlowski further testified that he observed skid marks which he concluded to be from Stift's automobile in the left lane of eastbound 22nd Street 20 to 40 feet east of the intersection running continuously for 40 to 60 feet. He concluded that Lizzadro, as the northbound driver stopped on Jorie Boulevard at the intersection with 22nd Street, could have seen 22nd Street to the left for more than 100 feet. He also stated that the speed limit on 22nd Street is 40 miles per hour and that the intersection with Jorie Boulevard is on the crest of a small hill.

Mildred Mesi testified that she was a passenger in Lizzadro's car at the time of the accident. She stated that she was seated in the back of the vehicle behind the driver's seat and that Lizzadro stopped at the red light at Jorie Boulevard before turning onto 22nd Street. Mesi further stated that she looked to the left at the intersection and did not see any traffic coming from the west. Mesi next testified that after Lizzadro turned right onto 22nd Street and proceeded into the left lane, she felt three "thumps" coming from the rear left of the automobile.

With regard to her injuries, Stift testified that she had no physical problems prior to the accident and that she had previously participated in sports and exercise. She further stated that she immediately had pain in her neck and left shoulder after her car came to a stop following the collision. She was brought to the emergency room by ambulance but was released the same day. Stift later saw Dr. Mawaha, who prescribed muscle relaxants that she said "really didn't help that much."

Stift next saw Dr. Fortier at a rehabilitation clinic in Addison, Illinois, where she was given hot and cold treatments, as well as chiropractic, massage, and other therapies. She stated that she received no permanent relief from Dr. Fortier's treatments. Stift stopped seeing Dr. Fortier after three to four months.

Stift then testified that at the recommendation of her lawyer, she next saw Dr. Beatty with regard to her continuing pain. According to Stift, Dr. Beatty ran numerous tests on her including a CT scan, multiple MRIs, a bone scan and a myelogram. Dr. Beatty performed surgery on a muscle in her neck on January 11, 2002. The surgery left a scar on her neck which was published to the jury. The scar is not described in the record or by the parties other than the fact that it is on her neck and is permanent. Stift did not testify that the scar bothered her in any way. Stift testified that the surgery relieved some of her pain, but that she had "lots of tingling" around the incision and in her shoulder, and still had "back problems" when getting out of bed. Stift also testified as to her ongoing pain as of the date of the trial:

> "I still get migraines. I still have a lot of back pain in my upper area and depending on what kind of things I do, activities I have really depends on the amount of pain it is. My shoulder pain is gone. I don't have tingling that runs down my arm anymore but a lot of neck pain and migraines."

Stift further stated that she avoided sports and exercise after the collision because she "ha[d] trouble doing them" and they "[didn't] agree with [her] back." Additionally, she stated that she had difficulty taking deep breaths "here and there," and that she avoided "activities" that would force her to take deep breaths. However, during Lizaddro's cross-examination of Stift, she admitted that she worked as a pool attendant during the summer of 2001, between the time of her first appointment with Dr. Beatty and the January 2002 surgery.

Dr. Beatty testified that he first saw Stift on May 10, 2001, and that she told him she had missed one day of work due to her injuries. He performed an examination and also reviewed X rays and an MRI scan that Stift brought with her. Dr. Beatty stated that Stift had a

straightening of the normal curve of the neck which is usually caused by a muscle spasm. He also observed that the movements in her neck were painful. On May 15, 2001, Dr. Beatty directed Stift to undergo further X rays, a CT scan and a myelogram. On June 5, 2001, Dr. Beatty had Stift submit to an additional MRI. On June 13, 2001, Dr. Beatty had Stift undergo a bone scan, the results of which ruled out the possibility of a tumor or infection.

On December 20, 2001, Dr. Beatty again saw Stift. He diagnosed her symptoms to be the result of an injury to her scaling muscle and recommended surgery. Dr. Beatty described the scaling muscle as an accessory muscle of respiration that helps raise the chest cavity and increase the volume inside the lungs. Dr. Beatty stated that the scaling muscle is used by people who need a lot of air in their activities such as mountain climbers and marathon runners. Dr. Beatty also said that at the December 20, 2001, appointment, Stift reported having neck pain and tingling in her left arm.

Dr. Beatty further testified that he successfully performed surgery on Stift's scaling muscle on January 11, 2001. He stated that the surgery did not impair her resumption of normal activities but that her scaling muscle is no longer able to fully expand her lungs during rigorous activities and that, during those conditions, she could experience a shortness of breath. Dr. Beatty advised Stift to restrict her activities for a few weeks after the surgery but told her that she could then return to normal activities. On January 24, 2002, Dr. Beatty saw Stift for a follow-up visit and he stated that she complained of no further symptoms but merely related that the numbness in her hand was gone. Dr. Beatty also testified that he next saw Stift on June 3, 2002, that he was unsure why she came to see him that day, that she told him that her symptoms were better, that she had no numbness in her hand, but that she did have some numbness around the incision from the surgery. Dr. Beatty said the numbness was a normal consequence of the surgery. Dr. Beatty further testified that Stift did not complain about any neck stiffness or neck pain on June 3, 2002, and that he did not prescribe any treatment. Dr. Beatty saw Stift again on May 19, 2003, and she said she had no arm or shoulder pain but that she was having migraine headaches and some neck stiffness. Dr. Beatty also testified that, in his opinion, all of the symptoms for which he treated Stift were the result of the scaling muscle injury caused by the May 21, 2000, collision. Finally, Dr. Beatty testified that he could not state with a reasonable degree of medical and surgical certainty that Stift would experience ongoing neck stiffness as a result of the collision in the future.

At the instructions conference after the close of the parties' cases,

the plaintiff submitted, among others, the following pattern jury instruction:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant, taking into consideration the nature, extent and duration of the injury.

1. The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

\* \* \*

Whether any of these elements of damages has been proved by the evidence is for you to determine." Illinois Pattern Jury Instructions, Civil, Nos. 30.01, 30.05 (2000).

The defense counsel objected to the instruction on the grounds that there was no testimony, and particularly no medical testimony, stating that Stift would have pain and suffering in the future. Plaintiff's counsel argued that Stift had testified to ongoing pain and also that Dr. Beatty testified to the permanent disability with regard to the scaling muscle. The court noted that Stift complained of ongoing migraine headaches and back pain depending on her activities, but it refused the tendered instruction noting that the points argued by plaintiff's counsel could fit under the "loss of normal life" instruction.

The jury was given three verdict forms. Verdict form A was a finding against defendant with an itemization of the damages that could be awarded, which included the pain and suffering experienced, the loss of normal life experienced, the loss of normal life reasonably to be experienced in the future, the reasonable expense of necessary medical care, treatment, and services received, and the disfigurement resulting from the injury. Verdict form B was also a finding against defendant with an identical itemization of damages, but additionally allowed the jury to find contributory negligence on the part of plaintiff. Verdict form C was a finding for defendant. As noted, the jury used verdict form B, finding Stift 35% contributorily negligent and awarding $40,000 for pain and suffering experienced, $0 for loss of normal life experienced, $0 for loss of normal life reasonably certain to be experienced in the future, $26,646.96 for medical expenses and $0 for disfigurement.

## II. ANALYSIS

■ Stift first contends that the trial court erred in rejecting the jury instruction regarding future pain and suffering. The standard of review applicable to this issue has been described as follows:

"[T]he determination of proper jury instructions lies within the

sound discretion of the trial court; a reviewing court will not disturb the determination of the trial court absent a clear abuse of that discretion. [Citation.] A new trial will be granted based on a trial court's refusal to give a tendered instruction only when the refusal amounts to a serious prejudice to a party's right to a fair trial. [Citation.]" *Linn v. Damilano,* 303 Ill. App. 3d 600, 606-07, 708 N.E.2d 533, 538 (1999).

■ The general rule is that a party is entitled to a jury instruction on a certain theory of recovery if there is "some evidence" in the record to support it. *Maddox v. Rozek,* 265 Ill. App. 3d 1007, 1009, 639 N.E.2d 164, 166 (1994); *Lundquist v. Nickels,* 238 Ill. App. 3d 410, 432-33, 605 N.E.2d 1373, 1388 (1992); *Onion v. Chicago & Illinois Midland Ry. Co.,* 191 Ill. App. 3d 318, 320, 547 N.E.2d 721, 724 (1989); *Neyzelman v. Treitman,* 273 Ill. App. 3d 511, 518, 652 N.E.2d 1300, 1305 (1995). "Evidence of future pain and suffering requires a showing that it is reasonably certain to occur in the future." *Maddox,* 265 Ill. App. 3d at 1009, 639 N.E.2d at 166. Several Illinois cases have held that the evidence required to support a jury instruction on future pain and suffering can be established by either expert or lay testimony. See, *e.g., A.O. Smith Corp. v. Industrial Comm'n,* 69 Ill. 2d 240, 245, 371 N.E.2d 607, 609 (1977) ("the general rule is that direct expert evidence is not essential to establish the permanency or future effects of an injury"); *Onion,* 191 Ill. App. 3d at 320, 547 N.E.2d at 723 (" '[s]ome evidence' *** from either an expert or a lay person warrants the giving of a jury instruction"); *Ross v. Aryan International, Inc.,* 219 Ill. App. 3d 634, 648, 580 N.E.2d 937, 946 (1991); *Pourchot v. Commonwealth Edison Co.,* 224 Ill. App. 3d 634, 637, 587 N.E.2d 589, 592 (1992).

However, lay testimony will only suffice to warrant a jury instruction on future pain and suffering when the existence of the plaintiff's ongoing pain and suffering would be readily apparent to a lay jury from the nature of the injury. See *Maddox,* 265 Ill. App. 3d at 1010-11, 639 N.E.2d at 167. In *Maddox,* the court effectively articulated and analyzed this rule as follows:

"Where future pain and suffering can be objectively determined from the nature of an injury, the jury may be instructed on future pain and suffering based on lay testimony alone or even in the absence of any testimony on the subject. Where future pain and suffering is not apparent from the injury itself, or is subjective, the plaintiff must present expert testimony that pain and suffering is reasonably certain to occur in the future to justify the instruction." *Maddox,* 265 Ill. App. 3d at 1011, 639 N.E.2d at 167.

The court in *Maddox* found no objective evidence of future pain and suffering under its facts when the plaintiff, who was allegedly injured in an automobile accident, merely complained of back and shoulder

pain but was not noticeably in pain at trial. *Maddox*, 265 Ill. App. 3d at 1011, 639 N.E.2d at 167.

In contrast, the court in *Neyzelman,* on which Stift relies, albeit in a different context, applied the same principles to a different result in finding that the plaintiff did provide objective evidence of ongoing pain and suffering. *Neyzelman,* 273 Ill. App. 3d at 518, 652 N.E.2d at 1305. In that case, a child was injured in an automobile accident and subsequently suffered from post-traumatic stress syndrome that manifested itself in a permanent condition of stuttering. *Neyzelman,* 273 Ill. App. 3d at 513, 652 N.E.2d at 1302. The court found that the fact that the child stuttered while testifying constituted objective evidence such that the trial court's jury instruction regarding future pain and suffering was proper. *Neyzelman,* 273 Ill. App. 3d at 518, 652 N.E.2d at 1305.

■ Stift first contends that "some evidence" of future pain and suffering was established by her own testimony. Specifically, Stift points to her testimony that she has ongoing neck pain and migraine headaches as well as discomfort during certain activities. However, Stift's contention suffers the same impediment as that suffered in *Maddox*. Like the plaintiff in that case, Stift complained of ongoing pain, but no symptoms were readily apparent to the lay jury. Stift did not display any objective manifestation of her pain like the stuttering plaintiff in *Neyzelman*. Therefore, the lay jury could not gauge her alleged ongoing pain for purposes of awarding damages without the assistance of expert testimony. Consequently, Stift's testimony did not entitle her to a jury award on pain and suffering.

Stift further contends, however, that the expert testimony of Dr. Beatty was sufficient to warrant a future pain and suffering jury instruction. We disagree. During Stift's direct examination of Dr. Beatty, the following colloquy took place:

"Q. I'm just going to ask you, might or could Miss Stift experience ongoing neck stiffness as a result of the motor vehicle accident?

A. Yes, she could.

Q. Is that to a reasonable degree of medical and surgical certainty?

A. No, it isn't. I can't—it's one of those questions where I'm not sure what her future's going to be with her neck."

Moreover, although Dr. Beatty testified that Stift's scaling muscle was permanently impaired and that she could potentially feel the effect of the loss of that muscle anytime she engaged in rigorous activity, Stift did not ask Dr. Beatty whether the impairment would engender future pain and suffering. The testimony that Dr. Beatty gave does not

compel the conclusion that any residual impairment resulting from that injury would engender future pain and suffering as opposed to a mere reduction of the scaling muscle's capacity to fully expand the lungs during rigorous activity. Consequently, we cannot say that the trial court's failure to give instructions on future pain and suffering was an abuse of discretion. As to the testimony of Dr. Beatty regarding the diminished capacity of the scaling muscle, the jury was free, if it gave credence to that testimony, to reflect that injury in assessing an award for future loss of normal life as contained in verdict forms A and B.

■ Stift next contends that the trial court erred in denying her posttrial motion for a new trial on the issue of damages. In this regard, Stift contends that the jury disregarded the evidence by awarding $0 for the loss of normal life, $0 for the loss of normal life reasonably certain to be experienced in the future, and $0 for the disfigurement resulting from the injury. The standard of review applicable to this issue was discussed by the supreme court in *Maple v. Gustafson*, 151 Ill. 2d 445, 455-56, 603 N.E.2d 508, 513 (1992):

> "A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion. [Citations.] In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. [Citation.] Furthermore, it is important to keep in mind that ' "[t]he presiding judge in passing upon the motion for a new trial has the benefit of his previous observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility." ' [Citation.] If the trial judge, in the exercise of his discretion, finds that the verdict is against the manifest weight of the evidence, he should grant a new trial ***."

The *Maple* court further described that " '[a] verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any evidence.' [Citations.]" *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512-13.

■ Furthermore, the determination of damages is a question of fact for the jury which will not be upset by a reviewing court " 'unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered.' " *Snover v. McGraw*, 172 Ill. 2d 438, 447, 667 N.E.2d 1310, 1315 (1996), quoting *Gill v. Foster*, 157 Ill. 2d 304, 315, 626 N.E.2d 190 (1993). With regard specifically to damages for past and

future loss of normal life, we first note that the term "loss of normal life" has been described as "a component of disability which compensates for a change in the plaintiff's lifestyle." *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1135, 738 N.E.2d 542, 554 (2000), citing *Holsten v. Sisters of the Third Order of St. Francis*, 247 Ill. App. 3d 985, 1005, 618 N.E.2d 334 (1993); *Martin v. Cain*, 219 Ill. App. 3d 110, 115, 578 N.E.2d 1161 (1991); *Sands v. Glass*, 267 Ill. App. 3d 45, 50, 640 N.E.2d 996 (1994).

■ Stift contends that the jury's finding of zero damages for past and future loss of normal life was against the manifest weight of the evidence because there was uncontroverted testimony that she had ongoing pain, avoided sports and exercise due to pain and shortness of breath, and had a permanent impairment of the scaling muscle. We disagree. Where evidence is contradicted, or where it is merely based on the subjective testimony of the plaintiff, a jury is free to disbelieve it. See *Snover*, 172 Ill. 2d at 449, 667 N.E.2d at 1316 ("In cases in which a plaintiff's evidence of injury is primarily subjective in nature and not accompanied by objective symptoms, the jury may choose to disbelieve the plaintiff's testimony as to pain. In such a circumstance, the jury may reasonably find the plaintiff's evidence of pain and suffering to be unconvincing"); *Maple*, 151 Ill. 2d at 452, 603 N.E.2d at 511-12 ("Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony").

The evidence Stift relies on as establishing loss of normal life was neither definitive nor uncontradicted. As noted, Stift provided only her own subjective testimony regarding her ongoing pain. In that regard, Dr. Beatty testified that Stift had no complaints of any pain at her first two post-surgery visits and that Stift did not report that she was experiencing migraine headaches and neck stiffness until her third visit, over two years after the surgery. With respect to shortness of breath, Dr. Beatty merely testified that Stift could experience a shortness of breath when engaging in rigorous activities, but he stated that the impairment would not affect her normal activities Furthermore, he did not tell her to avoid engaging in rigorous activities. More overridingly, Dr. Beatty averred that Stift never complained to him in any of her post-surgery visits that she actually experienced any shortness of breath, and, at trial, Stift merely testified to experiencing it "here and there." These factors, coupled with the fact that Stift only missed a single day of work and was able to work as a pool attendant prior to the surgery, lead us to conclude that the jury's findings with regard to past and future loss of normal life were not unreasonable.

Stift asks us to follow *Obszanski v. Foster Wheeler Construction, Inc.*, 328 Ill. App. 3d 550, 765 N.E.2d 1193 (2002). However, the facts of *Obszanski* are distinguishable. In *Obszanski*, the plaintiff injured his back when he slipped and fell while working as an ironworker at a construction site. *Obszanski*, 328 Ill. App. 3d at 552, 765 N.E.2d at 1195. The plaintiff testified that he immediately felt pain in his back but was able to return to work after stretching. *Obszanski*, 328 Ill. App. 3d at 552, 765 N.E.2d at 1195. The plaintiff first sought medical attention the next week and eventually had surgery requiring an overnight stay in the hospital. *Obszanski*, 328 Ill. App. 3d at 556, 765 N.E.2d at 1198. He was not able to return to work until nearly six months later. *Obszanski*, 328 Ill. App. 3d at 556, 765 N.E.2d at 1198. The majority of the court stated, over a vigorous dissent, that there was uncontroverted evidence that the plaintiff was disabled and that the jury's failure to award damages for the disability[1] was not supported by the evidence and could not stand. *Obszanski*, 328 Ill. App. 3d at 556, 765 N.E.2d at 1198. We are inclined to reject *Obszanski* insofar as the plaintiff's symptoms of disability were wholly subjective and apparently predicated solely upon his testimony, as they are here. See *Snover*, 172 Ill. 2d at 449, 667 N.E.2d at 1316 (noting that a jury may disbelieve a plaintiff's subjective evidence as to pain); *Maple*, 151 Ill. 2d at 452, 603 N.E.2d at 511-12. However, we need not reject the majority opinion in *Obszanski* to uphold the jury's verdict in this case since the majority in *Obszanski* appeared to agree that if evidence is controverted a jury can choose to disregard the plaintiff's testimony. See *Obszanski*, 328 Ill. App. 3d at 556, 765 N.E.2d at 1198. The *Obszanski* majority, however, maintained that the evidence in that case was uncontroverted. *Obszanski*, 328 Ill. App. 3d at 556, 765 N.E.2d at 1198. In contrast, for the reasons pointed out, Stift's testimony is inconsistent with the testimony of Dr. Beatty in that she did not complain of pain or shortness of breath, she only missed a single day of work, and she was able to work as a pool attendant. Furthermore, there was nothing in Dr. Beatty's testimony to suggest that Stift's injury would involve ongoing pain or a loss of normal life. Consequently, consistent with both the majority and the dissent in *Obszanski*, we find that the failure to award damages for past and future loss

---

[1] We note that "disability" implicates many of the same factors as "loss of normal life" and, under certain circumstances, the terms can be used interchangeably. See *Jones*, 316 Ill. App. 3d at 1135, 738 N.E.2d at 554; *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 631 N.E.2d 1269 (1994); *Torres v. Irving Press, Inc.*, 303 Ill. App. 3d 151, 707 N.E.2d 248 (1999); *Turner v. Williams*, 326 Ill. App. 3d 541, 762 N.E.2d 70 (2001).

of normal life was not against the manifest weight of the evidence and the trial court, therefore, did not abuse its discretion in refusing to grant a new trial.

■ Next, the jury's determination that Stift was entitled to no compensation for disfigurement was also not so clearly unreasonable that the trial court's denial of her motion for a new trial would constitute an abuse of discretion. Disfigurement has been defined as that " 'which impairs or injures the beauty, symmetry, or appearance.' " *Rapp v. Kennedy*, 101 Ill. App. 2d 82, 84, 242 N.E.2d 11, 13 (1968), quoting *Superior Mining Co. v. Industrial Comm'n*, 309 Ill. 339, 340 (1923). Although the fact that Stift incurred a permanent scar as a result of the surgery on her neck is not disputed, she did not testify that it caused her any embarrassment or grief and neither did any witness testify that the scar was noticeable. See *Zuder v. Gibson*, 288 Ill. App. 3d 329, 336, 680 N.E.2d 483, 489 (1997) (holding that where no testimony was given regarding embarrassment, grief, or noticeability of a scar, the jury was free to determine whether scar amounted to a disfigurement). Thus, the jury's determination that Stift did not suffer a compensable disfigurement was based on the only evidence it had on the subject, namely, its firsthand observation of the scar itself, which, as previously noted, is not described or documented by any photo in the record. Thus, for all we know, the jury could have determined that it was not noticeable or that it did not impair her "beauty, symmetry, or appearance." *Rapp*, 101 Ill. App. 2d at 84, 242 N.E.2d at 13; *Zuder*, 288 Ill. App. 3d at 336, 680 N.E.2d at 489 (Where a jury could reasonably conclude that damages are minimal, a jury's failure to award damages for disfigurement after surgery should not be set aside); citing *Simon v. Van Steenlandt*, 278 Ill. App. 3d 1017, 1021, 664 N.E.2d 231 (1996). As previously noted, since the scar is not described in the record other than the fact that it is on the neck, we are in no position to second-guess the jury's determination that there was no disfigurement; nor for that matter can we say that the trial judge, who was also able to observe the scar firsthand (see *Maple*, 151 Ill. 2d at 456, 603 N.E.2d at 513), abused his discretion in denying the motion for a new trial on the issue of disfigurement.

■ Stift finally contends that the trial court erred in refusing to grant her a new trial because the jury's finding that she was 35% contributorily negligent was against the manifest weight of the evidence. Stift, however, cites no authority to support her contention other than to cite the standard of review. Instead, Stift merely contends that she had the right of way, that she was not traveling in excess of the speed limit and that Lizzadro negligently caused the col-

lision. The jury could reasonably have concluded that Stift was contributorily negligent for any number of reasons based on the facts in the record, including that she failed to apply her brakes prior to the collision, that she failed to keep a proper lookout, or that she failed to reduce her speed when crossing an intersection. Thus, because the jury's determination of contributory negligence is not against the manifest weight of the evidence, the trial court's refusal to grant a new trial was not an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, we affirm.

Affirmed.

CAHILL, P.J., and BURKE, J., concur.