NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240804-U

NO. 4-24-0804

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 14, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JESSICA DELGADO, Individually and | ) | Appeal from the |
| as Next Best Friend of Minor Child | ) | Circuit Court of |
| AALIYAH YANCY, and ALEXIS PURIFOY, | ) | Winnebago County |
| Individually, | ) | No. 15L380 |
| Plaintiffs-Appellees, | ) | |
| v. | ) | |
| ROCKFORD MEMORIAL HOSPITAL, | ) | |
| ROCKFORD HEALTH PHYSICIANS, | ) | |
| ROCKFORD HEALTH SYSTEMS, and | ) | Honorable |
| LESTER C. JURGENS, M.D., | ) | Lisa Renae Fabiano, |
| Defendants-Appellants. | ) | Judge Presiding |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*:  As the evidence does not support an award of $0 for disfigurement, the trial court
did not abuse its discretion in granting plaintiffs a new trial.

¶ 2     On March 4, 2015, Alexis Purifoy, a minor, gave birth by emergency cesarian

section (C-section) to Aaliyah Yancy. During the C-section, Yancy, at approximately 33 weeks'

gestation, suffered a laceration the length of her abdomen. Defendant, Lester C. Jurgens, M.D.,

performed the C-section. As a result of the laceration and repair, Yancy suffered scarring on her

abdomen.

¶ 3     In December 2015, plaintiffs, Purifoy, Yancy, and the mother of Purifoy and

grandmother of Yancy, Jesseca Delgado, sued defendants, Jurgens, Rockford Memorial Hospital,

Rockford Health Physicians, and Rockford Health Systems, for negligence for the injury caused

to Yancy. After a contested jury trial on both liability and damages, the jury found for plaintiffs, awarding $75,000 in total damages. In this damages award, the jury awarded $0 for "disfigurement resulting from the injury." Plaintiffs moved for a new trial, alleging, in part, no reasonable jury could find Yancy was entitled to nothing for disfigurement.

¶ 4     In June 2023, the trial court agreed with plaintiffs and ordered a new trial. The court found plaintiffs presented sufficient evidence of the scar and its effect on Yancy to prove she was entitled to some award for disfigurement. Defendants appeal, arguing (1) the court erred in finding the $0 award for "disfigurement" requires a new trial and (2) evidence of a compromise verdict is not by itself an appropriate basis to set aside a jury verdict. We affirm.

¶ 5                           I. BACKGROUND

¶ 6                          A. Motion to Strike

¶ 7     In their appellee brief, plaintiffs provide an "Additional Statement of Facts." While appellees need not include a statement of facts under Illinois Supreme Court Rule 341(i) (eff. Oct. 1, 2020), if they choose to do so, they must comply with Rule 341(h)(6). Rule 341(h)(6) requires statements of facts to "contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal ." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 8     Defendants moved to strike large portions of the additional statement of facts in the appellee brief, arguing plaintiffs failed to comply with Rule 341(h)(6). Defendants contend plaintiffs repeatedly misrepresent facts and fail to cite pages in the record to support their allegations of fact. For example, defendants point to page five of the appellee brief in which plaintiffs assert, without citation to the record, the medical bills for Yancy's 33-day hospital stay exceeded one million dollars. Defendants argue this is a misrepresentation and cite the record

showing the actual amount of the medical bills as approximately $217,000.

¶ 9        We agree plaintiffs' additional statement of facts contains unsupported and misrepresented allegations of fact but we deny defendants' motion to strike. Defendants' appellant brief is not without flaw. For example, in support of its "facts" in the factual background section, defendants describe Yancy's alleged demeanor when showing her scar to the jury. Defendants, for support, cite "C 2389 V3." That page, however, provides no evidentiary support for defendants' assertions of fact. The previous page in the record discusses Yancy's demeanor, as set forth in the appellant brief, but this page appears in defendants' "Memorandum in support of motion to reconsider." In that memorandum, defendants elsewhere cited the record for other factual statements but cited no support for their summary of Yancy's actions. Defendants' summary is not supported by any sworn testimony or by video evidence.

¶ 10        Although we deny the motion to strike, we will not consider "facts" not supported by the record. This includes the unsupported allegations and misrepresentations by plaintiffs that were identified by defendants in their motion to strike as well as defendants' purported summary of Yancy's demeanor before the jury.

¶ 11                                    B. Trial

¶ 12        A lengthy jury trial was held between August 29, 2022, and September 12, 2022. The trial court characterized the issue of liability as "hotly contested." As the issue on appeal concerns one element of the damages award, we need not summarize testimony relevant to the issue of liability or, for the most part, the other elements of the damages award. We summarize some additional testimony for context.

¶ 13        On March 4, 2015, Purifoy, at 32 weeks and 5 days pregnant, arrived at Rockford Memorial Hospital. There, Dr. Jurgens, the attending obstetrics physician, performed an

emergency C-section delivery. Yancy, the infant, sustained an "abdominal wall defect" the length of her abdomen during the C-section. The "abdominal wall defect" was closed in an operating room on the day of delivery.

¶ 14 Yancy remained in the hospital for 24 days after her birth. According to the testimony, most of Yancy's time in the hospital was related to her prematurity and not from the injury she suffered at birth. On average, according to testimony at trial, a baby at 32 weeks' gestation remains hospitalized for 3 weeks after birth.

¶ 15 The jury saw a video of a January 3, 2020, examination of Yancy, two months from her fifth birthday, by defendants' pediatric plastic-surgery expert, John Reinisch, M.D. Defendants, in their statement of facts, emphasize the jury saw a "four minute and sixteen second video" of the examination. The time period in which Yancy's scar was exposed to the doctor was approximately one minute, during which Dr. Reinisch attempted to ease any tension or concern by tickling Yancy, leading her to laugh and say, "stop it." At the doctor's request to see her scar, Yancy looked down and began to pull up her shirt. Delgado assisted in pulling the shirt higher to show the doctor the scar and so he could examine Yancy's breast tissue. Yancy, in that minute her abdomen was exposed, had to be told to move her hands from in front of her stomach to her side. The video did not show a closeup of the scar. After Dr. Reinisch took photos of the scar, Yancy, with her grandmother's assistance, pulled her shirt over her abdomen.

¶ 16 The jury was shown two photographs of the scar taken by Dr. Reinisch during his January 3, 2020, examination. The jury was also shown photographs taken shortly after her birth. On August 30, 2024, Yancy entered the courtroom to show the jury her scar.

¶ 17 Dr. Reinisch, who observed the scar in January 2020, testified Yancy's scar was "soft" and "mature" and "the orientation of the scar would most likely not cause a problem [with

her breast development] as she grew taller." He opined the scar would grow in length as the child grows, but the starting and ending point would remain the same. The scar extended "from the left, inframammary fold inferiorly to her right and parallel to the chest margin, called the costal margin." Dr. Reinisch further explained: "The inferior limit of the scar stops at the upper abdominal quadrant. The upper limit of the scar terminates at the future left inframammary fold." The scar was not red or thick or "keloid." Dr. Reinisch opined Yancy "will grow to her normal height without it causing any significant tethering or limitation of her movement." Dr. Reinisch later clarified the scar "will not cause future tethering."

¶ 18        When asked about scar revision, Dr. Reinisch testified one had "to sort of weigh the chances of it ending up being better." According to Dr. Reinisch, Yancy's "scar is not bad." He opined if Yancy "hated it," they could try to make it better. It would not be taken away completely but possibly improved by 20% with "a chance it would be worse." Dr. Reinisch would not recommend Yancy try to improve it surgically. Dr. Reinisch agreed some kids are ashamed of or terribly embarrassed by scars or disfigurement, while others will "just let the world see" their disfigurement.

¶ 19        Both Purifoy and Delgado testified regarding Yancy's feelings about her scar. Purifoy testified she "never noticed [Yancy] actually noticing the scar" "until recently her actually knowing what's going on with it and knowing—being curious about it." On August 28, 2022, Yancy's sister had a pool party. Purifoy bought Yancy a two-piece swimsuit. Yancy "said something about her looking fat and how the scar was poking out." That was the day Purifoy realized Yancy knew "something is not wrong, but something happened." Purifoy testified her mother, Delgado, had reported Yancy had commented on her scar. According to Purifoy, Yancy was "a lot more open with [Delgado] because they're very close." Yancy was "very verbal about

how she feels in regard to her body."

¶ 20 Delgado considered herself a coparent of Yancy. She and Purifoy made the decisions for Yancy together. When asked when Yancy first recognized her scar, Delgado testified it was probably when Yancy began walking. At that age, Yancy liked being naked. When she saw herself in the mirror, she would see the scar and touch it. Delgado believed, at the time of her testimony, Yancy was aware of her scar. Delgado testified as follows:

"She feels that she's different. She doesn't want to wear a two[-]piece. She doesn't like her stomach showing. We had to bribe her with Culver's so she would show you guys her stomach. She—she looks at her little sister and *** she's asked why her little sister doesn't have a scar like that. *** [S]he was born through her mom's stomach. She had a C-section, and she couldn't understand why she didn't have that happen to her."

¶ 21 Over two days, the jury deliberated approximately 14 hours. In that time, the jury foreman sent two messages to the trial court indicating the jury was deadlocked. In response, the court gave the *Prim* instruction. See *People v. Prim*, 53 Ill. 2d 62 (1972). A short time after the second *Prim* instruction was given, the jury returned its verdict. On the jury form, the jury awarded plaintiffs the sum of $75,000. Next to the line for "[t]he disfigurement resulting from the injury," the jury wrote $0. The same award was given for "loss of a normal life resulting from the injury" and "[f]uture medical bills." The jury awarded $70,000 for past medical bills and $5,000 for pain and suffering.

¶ 22 C. Posttrial

¶ 23 In October 2022, plaintiffs filed a posttrial motion seeking, in part, a new trial on

damages only. Plaintiffs argued, in relevant part, the jury erred in assigning an amount of $0 for "disfigurement" as the evidence showed Dr. Jurgens's negligence caused Yancy's scar that had increased in size and would continue to do so as Yancy grew.

¶ 24        Defendants countered in November 2022, arguing the $0 award of disfigurement did not require a retrial. They cited *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1029-31 (2005), as showing a $0 award for disfigurement was upheld when "the jury could have determined that the scar was not noticeable or that it did not impair the Plaintiff's beauty, symmetry, or appearance."

¶ 25        On June 1, 2023, the trial court granted plaintiffs' posttrial motion for a new trial. The court summarized plaintiffs sought the entire amount of the medical bills for Yancy's one-month hospital stay, approximately $217,000, but the jury awarded $70,000 for past medical expenses. The court found this amount reasonable given the testimony by a defense expert only some of the care Yancy received during the first three to four days in the neonatal intensive care unit was related to the laceration of her abdomen at birth, but the remainder of the treatment was due to her prematurity, having been born at approximately 33 weeks. The court found the $70,000 award was not manifestly inadequate and bore a reasonable relationship to the loss suffered.

¶ 26        The trial court found the award of $0 for future medical expenses was reasonable. The court noted there was testimony the surgery to revise the scar, that would cost $7,000, could improve the scar's appearance by about 20%. The defense expert testified he would not recommend the surgery as the scar had healed well and could look worse after the surgery.

¶ 27        Regarding disfigurement, the trial court found the following:

"Finally, and significantly, the jury awarded nothing for disfigurement. Disfigurement is defined as 'that which impairs or

- 7 -

injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, mis-shapen or imperfect, or deforms in some manner.' [Citation.] Plaintiff contends that no reasonable jury could find that the minor was entitled to nothing for disfigurement given the scar which runs diagonally the entire length of her abdomen.

Defendants contend that the jury's determination that the minor was not disfigured was not against the manifest weight of the evidence, unreasonable or arbitrary. They argue that the jury was presented with uncontroverted evidence of the necessity of the [C]-section and its emergent nature, and that the jury was put off by the plaintiff arguing repeatedly about [Yancy's] disfigurement and by having her show her abdominal scar in court. However, the fact that the [C]-section was necessary and emergent goes to the issue of liability, not damages. Those factors do not permit the jury to disregard a proven element of damages once it has determined that the defendants were negligent and returns a verdict on liability in favor of plaintiff. Likewise, being put off by plaintiff's counsel's arguments or the decision to have [Yancy] show the scar does not permit the jury to disregard a proven element of damages. Doing so would be to return a verdict that is impermissibly based upon passion or prejudice.

The determinative issue here is whether plaintiff presented

sufficient evidence of the scar and its effect on the minor such that she proved this element of damages and was entitled to some award for disfigurement. The evidence established that the scar has healed about as well as could be hoped for, but nonetheless it is a long and clearly visible scar which runs diagonally across the entire length of the child's abdomen. It is not small, but rather is several inches long. It is not hidden, for instance, in a skin crease or at the hair line, but is plainly noticeable. Plaintiff presented pictures of the scar, and [Yancy] showed her scar to the jury. Importantly,  [Delgado] testified that [Yancy] is conscious of the scar, has asked why she has a scar, and is bothered by it.

The case cited by defendants wherein the court upheld an award of zero for a scar is readily distinguishable from the instant case. In *Stift v. Lizzadro*, [362 Ill. App. 3d 1019 (2005),] the plaintiff was left with a scar on her neck, but did not testify that the scar caused her any embarrassment or grief, nor did any witness testify that it was noticeable. [Citation.] In addition, there was no evidence in the record as to how the scar appeared. Likewise, in *Zuder v. Gibson*, [288 Ill. App. 3d 329 (1997),] the jury declined to award any sum for disfigurement for a surgical scar on the plaintiff's neck. The court held that the jury did not disregard a proven element of damages because there was no testimony that the scar was noticeable or that it caused plaintiff embarrassment or

grief. [Citation.]

To the contrary here, there was ample evidence of the appearance and size of the scar, and that it is clearly noticeable. In addition, there was evidence that the child is aware of her scar and has expressed some concern about it. In terms of the scar's effect on [Yancy], it is important to note that she is only a young girl of eight years old who may not yet be fully cognizant of how the scar has affected her appearance. It is reasonable to assume that as she becomes older and more concerned with her appearance, this scar that runs the entire length of her abdomen may cause her some embarrassment, for instance when she wants to wear a two-piece bathing suit or has to shower in gym class. That being said, there were indeed factors that the jury could have considered to determine that a more modest award for disfigurement was justified. The scar is on the minor's abdomen where it will usually be covered by clothing. In addition, the scar has healed well. It is relatively smooth and without tethering. But the fact remains that this scar is not inconspicuous, hidden or minimal. Although there was a wide range of awards that the jury could have reasonably concluded was warranted, given the totality of the evidence, it is clear to the Court that disfigurement was a proven element of damages, and the jury was not free to disregard it completely."

¶ 28      The trial court then addressed the question of whether a new trial should be

awarded for damages only or a new trial on all issues. In finding a new trial on all issues warranted, the court stated the following:

"Having concluded that the jury disregarded a proven element of damages, it is necessary to analyze whether a new trial on damages only is appropriate. As stated, a new trial solely on the issue of damages is appropriate only when (1) the jury's verdict on the issue of liability is amply supported by the evidence; (2) the questions of liability and damages are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor that the error which resulted in the inadequate damages also affected its verdict on the question of liability. [Citation.] In the instant case, it is manifestly evident that plaintiff cannot establish that the jury did not reach a compromise verdict.

There is ample evidence that this was a compromise verdict. First, the issue of liability was hotly contested, defendants' negligence was not at all clear, and the evidence could easily have supported a verdict for defendants. [Citation.] Second, the jury deliberated for a long time, close to 14 hours over two days. The jury indicated twice that it was hopelessly deadlocked and could not reach a unanimous verdict, and the Court had to give both Prim instructions. Third, shortly after indicating for a second time that it

was deadlocked, the jury quickly reached a verdict, but ignored a proven element of damages. In fact, it ignored perhaps the main element of damages. All of this suggests that the jury's verdict was a compromise of liability against damages."

¶ 29 Defendants filed a motion to reconsider the order granting the new trial. The trial court denied the motion. This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31                          A. Damages for Disfigurement

¶ 32 On appeal, defendants argue the trial court erred in ordering a new trial as, they contend, the jury had sufficient evidence to find a $0 disfigurement award appropriate. Defendants contend the jury saw ample evidence of a faint and well-healed scar on Yancy as well as her interaction with the doctor, showing she was not embarrassed or bothered by her scar. Defendants also contend the jury viewed Yancy as she showed them her scar in court and could have determined she was not, in fact, troubled by or ashamed of her scar and that the scar did not disfigure her. Defendants emphasize the record contains scant evidence on the issue and plaintiffs did not define disfigurement for the jury or argue Yancy was disfigured because of the scar. Thus, defendants reason, the jury reasonably could have concluded the scar was not a disfigurement worthy of a damages award. As support, defendants rely on three cases that show a scar does not necessitate a dollar award for disfigurement.

¶ 33 Juries have "substantial discretion in determining the amount of damages." *Craigmiles v. Egan*, 248 Ill. App. 3d 911, 920 (1993). However, a new trial may be granted "if the damages are manifestly inadequate or if it is clear that proved elements of damages have been ignored or if the amount awarded bears no reasonable relationship to the loss suffered by

the plaintiff." *Hollis v. R. Latoria Construction, Inc.*, 108 Ill. 2d 401, 407 (1985). When the amount of the verdict is supported by the evidence, we will find the trial court abused its discretion in granting a new trial. See *Craigmiles*, 248 Ill. App. 3d at 920; see also *Brooks v. City of Chicago*, 106 Ill. App. 3d 459, 464 (1982) ("[W]hen the evidence supports the jury's verdict and there is no showing that a party was denied a fair trial, it is an abuse of discretion for the trial court to substitute its judgment for that of the jury.").

¶ 34    Despite the direction of *Craigmiles* and *Hollis* showing the abuse-of-discretion standard applies, defendants argue against that standard of review and contend we should review the matter *de novo*. In support, defendants rely on *Bank of America, N.A. v. Ebro Foods, Inc.*, 409 Ill. App. 3d 704, 709 (2011). According to *Bank of America*, "[w]hen reviewing a motion to reconsider that was based only on the trial court's application (or purported misapplication) of existing law, as opposed to [one] based on new facts or legal theories not presented in the prior proceedings, our standard of review is *de novo*." *Id.* (quoting *People v. $280,020 United States Currency*, 372 Ill. App. 3d 785, 791 (2007)).

¶ 35    We do not accept defendants' premise an argument can be made the trial court misunderstood or misapplied the law. Upon granting plaintiffs a new trial, the court provided a thorough and lengthy explanation of its analysis of this case. In that explanation, it is clear the court was aware of the case law showing $0 awards for disfigurement for a scar will withstand appellate scrutiny when the evidence supports such an award. The trial court here did not find those cases wrongly decided but found the cases were factually distinguishable from this case. The court properly understood the law and applied it to the facts. The *de novo* standard does not apply.

¶ 36    Turning to the substance of this case, we find the record does not support the

- 13 -

jury's $0 award for disfigurement and, thus, we find no abuse of discretion occurred. Disfigurement is defined in the case law as "that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, mis-shapen or imperfect, or deforms in some manner." *Corn Products Co. v. Industrial Commission*, 51 Ill. 2d 338, 341 (1972) (quoting *Superior Mining Co.*, 309 Ill. 340, 341 (1923)). As the trial court noted, the evidence firmly establishes Yancy suffered a lengthy, noticeable scar across her entire abdomen. Though well-healed, the scar was jagged. The scar cannot be eliminated with surgery and, at best, could only be improved by 20%. Defendants' expert did not recommend surgery. The scar will continue to lengthen as Yancy grows. The record further establishes Yancy was already aware of her scar and demonstrated an unwillingness to let others see it. Testimony by Yancy's grandmother demonstrates Yancy, at seven years old, did not want to wear a two-piece swimsuit in front of others and had to be bribed to show her scar to the jury. Plaintiffs proved disfigurement that is noticeable and irreparable and that caused the young, injured party distress. Damages for that disfigurement should have been awarded.

¶ 37      Defendants' case law is factually distinguishable and, therefore, not persuasive. In *Stift*, the trial court denied the plaintiff's motion for a new trial after finding the jury's determination the plaintiff was not entitled to compensation for disfigurement to be reasonable. *Stift*, 362 Ill. App. 3d at 1031. The *Stift* court noted the plaintiff "incurred a permanent scar," but the plaintiff "did not testify that it caused her any embarrassment or grief and neither did any witness testify that the scar was noticeable." *Id.* The jury's determination was based on its observation of the scar itself, which was not described or documented in the record. *Id.* In *Zuder v. Gibson*, 288 Ill. App. 3d 329, 336 (1997), a $0 award for disfigurement was upheld after the plaintiff exhibited a surgical incision on his neck to the jury, and his counsel "used a flashlight to

illuminate the surgical incision." There was no testimony showing the incision caused him embarrassment or grief and no testimony showing the scar was noticeable. *Id.* In *Simon By & Through Simon v. Van Steenlandt*, 278 Ill. App. 3d 1017, 1018 (1996), the jury heard testimony showing the victim "was a good candidate for reconstructive surgery" and such surgery could make the scar less apparent. The court found it reasonable for the jury, which awarded damages for the cost of plastic surgery to improve the scar, to determine the disfigurement would be "so slight as to not justify an award for damages," *Id.* at 1021.

¶ 38       Here, unlike in *Stift* and *Zuder*, Yancy's scar was noticeable and testimony established Yancy, at age seven, was self-conscious about her scar. Unlike in *Simon*, there is no testimony showing Yancy to be a good candidate for reconstructive surgery and no award for future medical expenses to cover surgical repair.

¶ 39                          B. Evidence of Compromise Verdict

¶ 40       Defendants last argue evidence of a compromise verdict is not, by itself, an appropriate basis to set aside a jury's verdict. Defendants acknowledge it was permissible for the trial court to consider whether there was evidence of a compromise verdict for the purpose of determining whether a new trial should be awarded on all issues or on damages only (*Hollis*, 108 Ill. 2d at 408) and they do not challenge that finding. Defendants, however, maintain, to the extent the court used the compromise verdict "to bend the facts to set aside the verdict," such consideration is impermissible.

¶ 41       We are fortunate the trial court provided its analysis of the damages awards and of whether to order a retrial on damages only or on all issues. This analysis shows no indication the compromise verdict was considered as evidence the jury's award of $0 for disfigurement was inadequate or improper. Defendants point to none. This argument is entirely speculative and,

therefore, fails.

¶ 42                                    III. CONCLUSION

¶ 43            We affirm the trial court's judgment.

¶ 44            Affirmed.