No. 2--05--0739          Filed:  6-7-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MICHAEL McNAMEE, as Guardian of the Estate of Molly McNamee, a Minor, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--L--97 |
| | ) | |
| RICHARD SANDORE, and ASSOCIATES FOR WOMEN'S HEALTH, | ) ) | Honorable |
| | ) | Henry C. Tonigan, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Michael McNamee (Michael), appeals from the judgment of the circuit court of Lake County granting summary judgment in favor of defendants, Richard Sandore and his employer, Associates for Women's Health (Associates), on Michael's claim that Sandore provided negligent obstetric care to his wife, Kimberly McNamee (Kimberly), while she was a patient at St. Therese Medical Center (St. Therese), where Sandore was a staff physician.  Michael alleged that the negligence resulted in birth defects to his and Kimberly's daughter, Molly McNamee.  We find that the entry of summary judgment was erroneous, and we reverse and remand.

BACKGROUND

This case has a substantial history, including one prior appeal to this court.  See McNamee v. Sandore, Nos. 2--02--1000, 2--02--1002, 2--02--1004 cons. (2003) (unpublished order under

Supreme Court Rule 23). In 1995, Michael and Kimberly, as parents and next friends of Molly, filed their first complaint in this proceeding, naming St. Therese and Sandore as defendants. Michael and Kimberly alleged that, on March 30, 1994, Kimberly, who was then pregnant with Molly, was admitted to St. Therese "for transvaginal hemorrhage secondary to placenta previa." They alleged that Sandore, a physician "specializing in the area of obstetrics and gynecology[,] *** did not examine [Kimberly] until he arrived at her bedside over an hour and one half after she had been admitted." Michael and Kimberly further alleged that, "though [Sandore] made the decision that a cesarean section was needed, over an hour passed before [Molly] was born." They alleged that "[a]s a proximate result of defendants' failure to comply with their duties [Molly] suffers from severe neurological damage." Michael and Kimberly did not claim that Sandore was the agent or apparent agent of St. Therese or otherwise make any allegation about Sandore's relationship with St. Therese. In early 1999, Michael and Kimberly voluntarily dismissed their claims against Sandore. Several months later, Kimberly, now the sole plaintiff, filed her fourth amended complaint against St. Therese, the sole defendant. In her complaint, Kimberly alleged that St. Therese was both directly and vicariously liable for Molly's injuries. In the vicarious liability counts, labeled "Apparent Agency," Kimberly alleged essentially the same conduct of Sandore that she alleged in the 1995 action, but now she added the allegation that, at all relevant times, Sandore "was on staff at [St. Therese]" and "was the agent or apparent agent of [St. Therese] as he was assigned to [Kimberly] and she had no choice in him as her doctor."

In December 1999, St. Therese filed a motion to dismiss the apparent agency counts of the complaint. St. Therese attached to its motion a copy of a form entitled "Admission and Treatment Consent." The consent form states in part:

"PHYSICIAN SERVICES: I understand the following: [St. Therese] does not render or provide physician services. Physician services are provided by private independent physicians who practice at [St. Therese]. These physicians, including emergency room physicians, are not agents or employees of [St. Therese]. [St. Therese] is not responsible for the services physicians provide.

The patient shall select the physician who is to render medical services. When special tests or services are to be performed by someone other than the patient's primary physician (such as an anesthesiologist, radiologist or pathologist), the patient should select the physician of his/her choice to perform those services."

At the bottom of the form are three signature lines. The first is labeled "Patient" and is signed "Kimberly McNamee." The second is labeled "Insured/Responsible Party" and is signed "Michael McNamee." The third is labeled "Hospital Representative" and bears the initials "CW" and the handwritten date of March 30, 1994. St. Therese submitted with the consent form an affidavit from Donna Jordan, a supervisor in its patient registration department. Jordan averred that the initials "CW" on the third line were from a hospital registrar and signified that the registrar witnessed the signatures on the two prior lines.

St. Therese argued that the consent form undermined Kimberly's apparent agency claims, by virtue of the rule in Gilbert v. Sycamore Municipal Hospital, 156 Ill. 2d 511 (1993):

" 'For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff

must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " Gilbert,156 Ill. 2d at 525, quoting Pamperin v. Trinity Memorial Hospital, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 855-56 (1988).

As for the first element, that of "holding out," the court explained:

"[This] element *** does not require an express representation by the hospital that the person alleged to be negligent is an employee. Rather, the element is satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors." Gilbert, 156 Ill. 2d at 525, citing Pamperin, 144 Wis. 2d at 207-08, 423 N.W.2d at 855-56.

The court also explained that the third element, that of "justifiable reliance," is "satisfied if the plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician." Gilbert, 156 Ill. 2d at 525. The court elaborated:

" '[T]he critical distinction is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is looking to the hospital merely as a place for his or her personal physician to provide medical care. Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care-- from blood testing to radiological readings to the endless medical support services--will be

provided by the hospital through its staff.'" Gilbert, 156 Ill. 2d at 525-26, quoting Pamperin, 144 Wis. 2d at 211-12, 423 N.W.2d at 857. The court cautioned that "liability attaches to the hospital only where the treating physician is the apparent or ostensible agent of the hospital" and that "[i]f a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." Gilbert, 156 Ill. 2d at 522.

St. Therese also cited James v. Ingalls Memorial Hospital, 299 Ill. App. 3d 627, 633 (1998), where the First District Appellate Court, applying the rule in Gilbert, held that if the plaintiff signed a consent form acknowledging that the hospital's staff physicians were not employees but independent contractors, it will be "extremely difficult" for the plaintiff to prove that the hospital held itself out in a manner that would lead a reasonable person to believe that its physicians were agents or employees of the hospital. St. Therese argued that Kimberly's claims failed under Gilbert because the consent form unequivocally conveyed to her that the physicians who provide services at St. Therese are independent contractors.

The record contains no transcript of a hearing on St. Therese's motion to dismiss. In a written order, the trial court granted the motion to dismiss as to Michael but denied it as to Kimberly and Molly because "a question of fact exists." (Michael, however, had no claims pending at the time of the decision, so the intended effect of this order is unclear.)

In July 2000, St. Therese filed a motion for summary judgment on the issue of apparent agency. This time, St. Therese attached not just the consent form but also Kimberly's July 2000 deposition.

In her deposition, Kimberly testified that, when the paramedics arrived at her home on March 30, 1994, she asked them to take her to Lutheran General Hospital. The paramedics refused, explaining that her condition necessitated that she be brought to the nearest hospital, which was St. Therese. Kimberly testified that the paramedics did not give her any information about the facilities or physicians at St. Therese. She stated that she did not "go to St. Therese because of its reputation of excellence or the quality of its physicians." Rather, she "was afraid of dying" and "was relieved that [the paramedics] were taking [her] to a hospital." Kimberly testified that she assumed at the time that St. Therese "had all the necessary medical treatment and personnel *** to examine and treat [her] as [she] needed." However, "it never entered [her] mind" whether "the doctors [at St. Therese] were [its] employees." She "assumed that if a physician is in a hospital he's an employee of the hospital." Asked if she would have refused to go to St. Therese had she known that its staff physicians were not its employees, she answered that she "didn't know [she] would have [had] an option to refuse." When the question was repeated later, Kimberly answered that she did not know whether she would have refused to go to St. Therese had she known the relationship between it and its staff physicians.

Kimberly testified that, when she arrived at St. Therese, Michael asked that she be transferred to Lutheran General to see her physician, Dr. Schwartz. He was told that Kimberly "needed to stay at Saint Therese" because she might bleed out or die on the way to Lutheran General Hospital. Kimberly denied that she signed a consent form when she registered at St. Therese. Shown a copy of the March 30, 1994, consent form, Kimberly acknowledged that the signature of "Michael McNamee" on the line labeled "Insured/Responsible Party" appeared to be in Michael's handwriting. She denied, however, that the signature of "Kimberly McNamee" on the line labeled "Patient" was

in her or Michael's handwriting. She testified that she did not authorize Michael to sign a consent form on her behalf, but she also did not prohibit him from doing so. She admitted, however, that she allowed Michael to take other actions on her behalf on March 30, 1994, such as calling the paramedics, arranging for care of their children during the hospital visit, and speaking to the nurses at St. Therese. Kimberly testified that, had Michael asked whether she wanted him to sign a general consent form, she would have given him permission.

In its motion for summary judgment, St. Therese reiterated the arguments based on the consent form that it had raised in its December 1999 motion to dismiss. St. Therese also argued that Kimberly's deposition showed that she did not "rel[y] upon any representations of St. Therese or Dr. Sandore or any other physician in going to St. Therese for treatment on March 30, [1994]," and therefore she did not establish the element of reliance required under Gilbert.

Kimberly filed a cross-motion for summary judgment, arguing that the undisputed facts fulfilled Gilbert's requirements. On Gilbert's element of "holding out," Kimberly claimed that there was "no dispute that [St. Therese] held itself to [sic] public, through its licensing as providing emergency room and maternity services, including the provision of a full-time 24 hour a day, emergency room physician and Level II maternity services." On the element of "justifiable reliance," Kimberly asserted that she did not "rely[] on a specific physician to provide her care at [St. Therese] because her specific physician [Dr. Schwartz] did not work at [St. Therese] and her requests to go to Lutheran General and be treated by that specific physician [Dr. Schwartz] were denied or ignored." She claimed that she "was compelled to rely upon [St. Therese] for the provision of complete emergency room/labor and delivery care" and she "did not select [Sandore], rather, the nursing staff merely called him based on the on-call sheet." Kimberly argued that there was no

evidence that she signed the consent form or that Michael signed it for her. Kimberly also argued that the consent form was "besides [sic] the point given that the paramedics and [St. Therese] consistently refused [her] request to go to Lutheran General and to get a physician in to see her."

The trial court denied St. Therese's motion for summary judgment but reserved its ruling on Kimberly's motion for summary judgment. The issue of apparent agency was thus left unsettled, as witnessed by Kimberly's later submission of a proposed jury instruction on apparent agency in anticipation of trial.

There was no trial, however, because the parties reached a settlement in September 2000. Kimberly and Michael signed a document entitled "Release and Settlement Agreement." It provided in part:

"1. FOR AND IN CONSIDERATION of the amounts, terms, and conditions stated herein, the terms and sufficiency of which are hereby agreed to and acknowledged by MICHAEL MCNAMEE, individually and as duly appointed Guardian of the Estate of Molly McNamee, a minor, and KIMBERLY MCNAMEE, individually, and as a Parent and Next Friend of MOLLY MCNAMEE, a minor (sometimes herein referred to as 'RELEASORS'), said Releasors hereby remise, release, and forever discharge PROVENA HEALTH D/B/A PROVENA ST. THERESE MEDICAL CENTER (sometimes herein collectively referred to as 'RELEASEES'), their heirs, executors, administrators, principals, servants, employees, nurses, representatives, assigns, and successors, from any and all claims, debts, dues, and obligations, of every kind and nature that the undersigned has or may have against PROVENA HEALTH D/B/A PROVENA ST. THERESE MEDICAL CENTER, which allegedly resulted or may result in physical injuries, losses and damages to the undersigned

arising or growing out of a certain incident which occurred on March 30, 1994, through the end of time as detailed and set forth in Releasors' complaint at law, Lake County, Illinois, Case Number 95 L 560, liability for which is expressly denied by PROVENA HEALTH D/B/A PROVENA ST. THERESE MEDICAL CENTER, in signing this release, the undersigned have not relied upon any representations made by any person or party or the agent of any person or party hereby released.

* * *

9. It is expressly understood and agreed that this release and settlement is intended to cover and does cover all claims sued for as well as all the claims, debts, dues and obligations of every kind and nature that the undersigned did not sue for, which arise, have arisen and will arise out [sic] this and all aspects of the handling of this claims [sic], the lawsuit, the lawsuit and settlement thereof, including but not limited to claims under the Illinois Supreme Court Rule 137 for which the undersigned may allege as responsible PROVENA HEALTH D/B/A PROVENA ST. THERESE MEDICAL CENTER."

Based on the settlement agreement, the trial court entered an order on September 21, 2000, dismissing with prejudice Kimberly's suit against St. Therese. Several days later, on September 27, 2000, Kimberly filed suit against Sandore and Associates. Kimberly alleged the same negligence of Sandore as before. She also alleged that Sandore was an employee of Associates at the time of his negligence. However, unlike in the 1995 action, Kimberly did not include any allegation of an agency relationship between St. Therese and either Associates or Sandore, but simply asserted that Sandore's negligence occurred while Kimberly was a patient at St. Therese.

In May 2002, Sandore and Associates filed a motion to dismiss the case. They argued that the new claims were based on the same conduct alleged of Sandore in the prior suit and therefore were extinguished, under the doctrine of res judicata, by the September 2000 settlement of the prior claims. They noted that res judicata bars an action where: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies" (Downing v. Chicago Transit Authority, 162 Ill. 2d 70, 73-74 (1994)). Sandore and Associates argued that the first element was satisfied because a dismissal with prejudice pursuant to a settlement agreement constitutes a final judgment on the merits. They argued that the second element was satisfied because "there can be no doubt that the [new and old] claims arise from the same transaction, that being the labor and delivery of [Kimberly] on March 30, 1994." On the third element, they contended that, because Kimberly asserted in the prior suit that Sandore was the apparent agent of St. Therese, she "cannot contest that Dr. Sandore [was] in privity with [St. Therese]."

In her response to the motion to dismiss, Kimberly disputed that a dismissal with prejudice pursuant to a settlement agreement may be considered a final judgment on the merits for purposes of res judicata. She also denied that Sandore was the apparent agent of St. Therese.

The trial court denied the motion to dismiss but certified the following questions for interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308):

"Where the plaintiff prosecuted a virtually identical medical malpractice action complaint in a prior suit against the Hospital based in part on plaintiff's allegations that Dr. Sandore breached the standard of care, that he was the agent or apparent agent of the Hospital and, that the Hospital was liable for his actions and, as a result, the Hospital was required and did

defend the actions of Dr. Sandore, until, on the eve of trial, the plaintiff entered an order which provided: 'the case is dismissed with prejudice':

    1. Whether there is an identity of interest between the Hospital and Dr. Sandore for purposes of application of res judicata, and

    2. Whether the dismissal order is a final judgment for purposes of application of res judicata."

We declined to answer the first certified question, finding that it depended on whether Sandore was the agent of St. Therese, a factual question that the trial court had not addressed. McNamee, Nos. 2--02--1000, 2--02--1002, 2--02--1004 cons., slip op. at 6-7. We answered the second certified question in the affirmative. McNamee, Nos. 2--02--1000, 2--02--1002, 2--02--1004 cons., slip op. at 6.

On remand, in October 2004, Sandore and Associates moved for summary judgment on grounds of res judicata. They asked that the trial court hold, as a matter of law, that Sandore was the agent or apparent agent of St. Therese when he rendered the allegedly negligent medical care on March 30, 1994. Sandore and Associates relied on a two-pronged judicial estoppel theory. First, they argued that Kimberly was barred from contradicting her legal position in the 1995 action that Sandore was an agent or apparent agent of St. Therese. Second, they argued that Kimberly was barred from contradicting her judicial admissions on the issue of apparent agency in the 1995 action. In the alternative, Sandore and Associates asked the trial court to hold an expedited trial on the issue of agency. Sandore and Associates suggested that our disposition implied that all elements of res judicata but privity had been satisfied, and that if the trial court found on remand that there was no dispute of material fact on the issue of whether Sandore was the agent or apparent agent of St.

Therese, it could grant summary judgment for Sandore and Associates on grounds of res judicata without making any further determination.

Sandore and Associates cited two sources for Kimberly's alleged judicial admissions. They cited her July 2000 deposition testimony that she did not request to be seen by Sandore or to be treated at St. Therese at all, but was taken there by the paramedics only because it was the closest medical facility. They also attached an affidavit that Kimberly submitted in the 1995 action. In that affidavit, she averred:

"2. I have examined a copy of the document entitled 'Admission and Treatment Consent.' ***

3. I did not sign this document on March 30, 1994. I did not see this document on March 30, 1994. The signature which purports to be my signature on the bottom of the page is not my signature.

4. At no time in the early morning hours on March 30, 1994, was I aware that Dr. Sandore was not an employee or agent of St. Therese Medical Center. At no time in the early morning hours on March 30, 1994[,] prior to the cesarean section operation was I ever told by anyone that Dr. Sandore was not an employee or agent of St. Therese Hospital.

5. I was brought to St. Therese Hospital by ambulance. My obstetrician was not on staff at St. Therese Medical Center.

6. When I arrived at St. Therese Hospital, I was taken to the Labor and Delivery floor. I had no doctor at St. Therese Medical Center that I was seeing at that time or that I knew. I was simply told that Dr. Sandore would be the doctor who would be treating me. I was never given any choice in who would be the physician to see me.

7. Prior to going to St. Therese Medical Center on March 30, 1994, I had never knew [sic] of Dr. Sandore, nor had I ever heard of him. If I had had any choice in the matter, I would have wanted a different doctor. Because I was never told I had any choice in the matter, I relied on St. Therese Medical Center to provide all of the care and treatment, including physician care and treatment, that me [sic] and my unborn child required on March 30, 1994."

In November 2004, before filing a response to Sandore and Associates' motion to dismiss, Kimberly served Sandore and Associates with requests to admit. Following are the pertinent requests and their answers:

1. "On and before March 30, 1994, [Sandore] was not an employee of [St. Therese]."

Sandore: "Admit."

Associates: "[Associates] lacks knowledge whether [Sandore] was an employee of [St. Therese] on or before March 30, 1994, and therefore neither admits nor denies this request to admit."

2. "On and before March 30, 1994, [Sandore] did not receive compensation from [St. Therese] for the care and treatment provided to his patients."

Sandore: "Admit."

Associates: "[Associates] lacks knowledge *** and therefore neither admits nor denies this request to admit."

3. "On and before March 30, 1994, [St. Therese] did not bill any of its patients for the physician treatment provided to those patients by [Sandore]."

Sandore: "Admit."

Associates: "[Associates] lacks knowledge *** and therefore neither admits nor denies this request to admit."

4. "On and before March 30, 1994, there was no contract of employment between [St. Therese] and [Sandore], or any other physician of [Associates]."

Sandore: "[Sandore] admits that he did not have a contract of employment with [St Therese] on or before March 30, 1994. [Sandore] objects to the remainder of the request to admit no. 4 since it is not directed against him and he has no personal knowledge of the same."

Associates: "[Associates] lacks knowledge *** and therefore neither admits nor denies this request to admit."

5. "On and before March 30, 1994, there was no contract of employment between [St. Therese] and Associates for Women's Health for the provision of physician services."

Sandore: "[Sandore] *** has no information regarding that information request."

Associates: "[Associates] admits Request to Admit No. 5."

6. "On and before March 30, 1994, no one at [St. Therese] authorized [Sandore] to act as an agent of [St. Therese] with respect to the care and treatment of patients at [St. Therese]."

Sandore: "[Sandore] objects to request to admit no. 6 to the extent that the form of the question is overly broad, ambiguous, vague, and calls for a legal conclusion and is argumentative as to whether [St. Therese] held out [Sandore] as its agent. To the extent that a response can be made to admit no. 6, it is denied as [Sandore] was authorized to practice medicine at [St. Therese] and have privileges to practice medicine at [St. Therese]."

Associates: "[Associates] lacks knowledge *** and therefore neither admits nor denies this request to admit."

7. "On and before March 30, 1994, no one at [St. Therese] authorized [Associates] to act as an agent of [St. Therese] with respect to the care and treatment of patients at [St. Therese]."

Sandore: "Sandore objects to request to admit no. 7 to the extent that it is not directed against [Sandore] and, therefore, no response is required."

Associates: "Associates for Women's Health admits Request to Admit No. 7."

In January 2005, the trial court granted Kimberly's motion to amend the caption to substitute Michael as plaintiff.

In April 2005, Michael filed his response to Sandore and Associates' motion for summary judgment. Michael argued that Sandore and Associates' assertion that his claim against them was barred by the doctrine of res judicata depended on the false supposition that Kimberly "succeeded on the apparent agency claim against [St. Therese]" in the 1995 action when in fact the dismissal with prejudice based on their settlement with St. Therese "determined, as if the matter had been resolved at trial, that [Sandore] was not an agent or apparent agent of the hospital." (Emphasis added.) Thus, according to Michael, the dismissal determined the precise opposite of what Sandore and Associates claimed it did. Michael also argued that the elements of judicial estoppel were not satisfied, because Sandore and Associates failed to show that Kimberly succeeded on her agency and apparent agency claims against St. Therese and gained a benefit thereby. See McDonald's Corp. v. American Motorists Insurance Co., 321 Ill. App. 3d 972, 987 (2001) (judicial estoppel applicable, inter alia, where opposing party "succeeded in asserting the first position and received some benefit

from it").  Michael claimed that a question of fact existed as to whether Sandore was the apparent agent of St. Therese when he rendered the allegedly negligent medical care.  In support of this claim, Michael attached an affidavit from Melanie Bryant of Vista Health, which operates St. Therese.  Bryant averred that her affidavit was in response to Michael's subpoena for "[a]ny and all documents showing whether [Sandore] did or did not have employment at [St. Therese]" and "[a]ny and all documents showing whether [Sandore] did or did not have any agency relationship with [St. Therese]."  She further averred:

"2. I was asked *** to search for documents responsive to the subpoena issued *** by Plaintiff's counsel in this case ***.

3. After a search of the records, I was able to locate the [St. Therese] privilege file for [Sandore].

4. I could find no other documents responsive to the attached subpoena."

Michael asserted that Bryant's affidavit showed that St. Therese "has no record whatsoever of anyone having authorized [Sandore] to act as its agent and no records showing that [Sandore] was an employee or agent of the hospital."

Following a hearing, the trial court granted summary judgment for Sandore and Associates:

"The Court is going to find that [Sandore] was an apparent agent of the hospital as a matter of law, and that certainly--there's a distinction between being an apparent agent and an actual agent, and so based upon the principles of judicial estoppel, I think the plaintiff should be estopped, judicially estopped from arguing that [Sandore] was not the apparent agent of the hospital.

The Court's going to grant summary judgment on behalf of [Sandore and Associates] and against the plaintiff on the apparent agency issue and find that there was an identity of interest between [Sandore] and [St. Therese] for purposes of <u>res judicata</u>."

When Michael inquired whether judicial estoppel was the sole basis for its finding as a matter of law that Sandore was the apparent agent of St. Therese, the court replied that the finding was "in part based upon the estoppel argument." Michael filed this timely appeal.

ANALYSIS

Michael contests the trial court's determination that summary judgment was appropriate on grounds of <u>res judicata</u>. Before analyzing this argument, we set forth the law of summary judgment and <u>res judicata</u>. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2--1005(c) (West 2004). In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. <u>Land v. Board of Education of the City of Chicago</u>, 202 Ill. 2d 414, 433 (2002). "Although summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic measure and should be granted only if the moving party's right to judgment is clear and free from doubt." <u>Land</u>, 202 Ill. 2d at 432. While "the nonmoving party is not required to prove his case in response to a motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment." <u>Land</u>, 202 Ill. 2d at 432. "A motion for a summary judgment should be denied if the facts in the record present more than one conclusion or inference, including one unfavorable to the movant." <u>Hahn v. Union Pacific R.R. Co.</u>, 352 Ill. App. 3d 922, 929 (2004).

The reviewing court reviews de novo the trial court's grant of summary judgment. Hahn, 352 Ill. App. 3d at 929.

"The doctrine of res judicata provides that a final judgment on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." Dowrick v. Village of Downers Grove, 362 Ill. App. 3d 512, 515-16 (2005). "For res judicata to apply, the following elements must exist: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." Dowrick, 362 Ill. App. 3d at 516.

Not all of these elements are in play here. In the prior appeal, we held that the 2000 settlement between Kimberly, Michael, and St. Therese was a final judgment on the merits for purposes of res judicata. See McNamee, Nos. 2--02--1000, 2--02--1002, 2--02--1004 cons., slip op. at 5-6. That holding is the law of the case, and we will not revisit it. See In re Christopher K., 217 Ill. 2d 348, 363 (2005) ("The law-of-the-case doctrine prohibits the reconsideration of issues that have been decided by a reviewing court in a prior appeal"). However, "[a]ssuming that a valid settlement agreement operates as a merger of all included claims and a bar thereto [citation], such an agreement nevertheless has no res judicata effect on those who were not parties to it or their privies." Jackson v. Callan Publishing, Inc., 356 Ill. App. 3d 326, 340 (2005). As Sandore and Associates were not parties to the settlement, Michael's present suit is barred only if Sandore and Associates were in privity with St. Therese. Sandore and Associates claim privity based on their status as the agents or apparent agents of St. Therese.

The record shows no actual agency relationship between St. Therese and either Associates or Sandore. In response to discovery requests, Sandore asserted that he was not an employee of St. Therese on or before March 30, 1994, and Associates asserted that it did not have a contract with St. Therese "for the provision of physician services" on or before March 30, 1994. There is no evidence in the record contradicting these assertions. The basis for the trial court's ruling was, in any event, not actual agency but apparent agency. The trial court found that there was no issue of material fact as to whether Sandore (and, by extension, his employer Associates) was the apparent agent of St. Therese. The court also held that Michael was judicially estopped from denying that Sandore was the apparent agent of St. Therese, because Kimberly had asserted the opposite in her vicarious liability claims against St. Therese in the 1995 action. Presumably, the trial court was referring to Kimberly's allegation in her complaint in the 1995 action that Sandore was "the agent or apparent agent of [St. Therese]."

Neither rationale offered by the trial court is sustainable. First, the trial court misconceived the doctrine of judicial estoppel. The doctrine does not apply to all types of inconsistency, but only inconsistency in assertions of fact. See People v. Jones, 223 Ill. 2d 569, 598 (2006) (State was not judicially estopped from changing its position on whether surcharge under section 5--9--1.1(c) of the Unified Code of Corrections (730 ILCS 5/5--9--1.1(c) (West 2004)) for a spinal research fund was a "fee" rather a "fine" because these positions were "legally inconsistent," not "factually inconsistent"); Cress v. Recreation Services, Inc., 341 Ill. App. 3d 149, 172 (2003) (plaintiff was not barred from arguing that federal law preempted his state law contract claims even though he previously argued the opposite; judicial estoppel "does not apply to legal positions"). As originally understood by Illinois courts, judicial estoppel "rests upon public policy which upholds the sanctity

of the oath [citation], and its purpose is to bar as evidence statements and declarations which would be contrary to sworn testimony the party has given in the same or previous judicial proceedings." Finley v. Kesling, 105 Ill. App. 3d 1, 9 (1982). "Having affirmed under oath that a given state of facts exists, a party cannot be permitted to later affirm that the contrary is true." Finley, 105 Ill. App. 3d at 9. Illinois courts have largely adhered to the position that judicial estoppel applies to "statements of fact" (Ceres Terminals, Inc. v. Chicago City Bank & Trust Co., 259 Ill. App. 3d 836, 851 (1994)), not to "opinions or legal positions" (Holzer v. Motorola Lighting, Inc., 295 Ill. App. 3d 963, 977 (1998)). Occasionally, however, our appellate courts have forgotten the original understanding of the doctrine and extended it to legal inconsistencies. See, e.g., Johnson v. Du Page Airport Authority, 268 Ill. App. 3d 409, 416 (1994) (judicial estoppel bars "inconsistent legal positions"). Our supreme court's decision in Jones restores the original understanding of judicial estoppel as barring factual inconsistencies, not legal inconsistencies.

Once the doctrine of judicial estoppel is properly understood, the trial court's error becomes plain. An assertion that an agency relationship exists between parties is a legal conclusion. See Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc., 229 Ill. App. 3d 119, 126 (1992) ("[t]he allegation that defendant was Capitol's agent is, by itself, a mere legal conclusion"). Therefore, Kimberly's allegation in the 1995 action that Sandore was "the agent or apparent agent of [St. Therese]" is a legal conclusion to which judicial estoppel does not apply.

The trial court was also wrong in concluding that there was no issue of material fact on the matter of apparent agency. This is so despite Sandore and Associates' efforts to bind Michael to certain judicial admissions in the 1995 action. "Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." In re Estate

of Rennick, 181 Ill. 2d 395, 406 (1998). "Where made, a judicial admission may not be contradicted in a motion for summary judgment." Rennick, 181 Ill. 2d at 406. Sandore and Associates seek to bind Michael to Kimberly's deposition testimony and affidavit, the thrust of both being that she relied on St. Therese itself for her medical care and did not request any particular physician--an important factor under Gilbert's test for apparent agency, as we previously noted. See Gilbert, 156 Ill. 2d at 525-26, quoting Pamperin, 144 Wis. 2d at 211-12, 423 N.W.2d at 857 (" 'An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care *** will be provided by the hospital through its staff' "). There remains, however, a factual dispute over a factor equally important in the Gilbert inquiry, namely, the March 30, 1994, consent form, which expressly states that the physicians on staff at St. Therese are not its employees but independent contractors. The form bears the signatures "Kimberly McNamee" and "Michael McNamee." Both at her deposition and in her affidavit Kimberly denied signing the form, but St. Therese submitted an affidavit from a supervisor of patient registration who claimed that the form was initialed by a registrar who witnessed the signatures. If Kimberly did sign the consent form, then it would be, in the words of James, "extremely difficult" (James, 299 Ill. App. 3d at 633) to conclude that Sandore was the apparent agent of St. Therese. See Churkey v. Rustia, 329 Ill. App. 3d 239, 241 (2002) (Gilbert criteria not satisfied, because hospital consent form said that hospital " 'uses independently contracted physicians' " and that " '[t]he physicians are not employees of [the hospital]' "); James, 299 Ill. App. 3d at 633 (similarly worded consent form defeated apparent agency claim). As there is a factual dispute on an issue material to the privity element of res judicata, the trial court erred in granting summary judgment in favor of Sandore and Associates.

Our conclusion that a question of fact exists on the issue of apparent agency is not inconsistent with our holding above that an allegation that a party is the agent or apparent agent of another is a legal conclusion. While agency is a legal concept, the existence and scope of an agency relationship is a fact-intensive inquiry reserved for the finder of fact unless the parties' relationship is so clear as to be undisputed. See Zahl v. Krupa, 365 Ill. App. 3d 653, 661 (2006). As it is unclear whether Sandore was the apparent agent of St. Therese, the question is reserved for the finder of fact.

For the reasons stated above, we reverse the judgment of the circuit court of Lake County and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GROMETER, P.J., and GILLERAN JOHNSON, J., concur.