NANCY H. STAMP, Plaintiff-Appellant, v. SALLY V. SYLVAN, Defendant-Appellee.

First District (3rd Division)    No. 1—08—1421

Opinion filed April 22, 2009.

Peter D. Kasdin, Ltd. (Peter Kasdin, of counsel), and Nathanson Law Firm (Phillip J. Nathanson, of counsel), both of Chicago, for appellant.

Bruce Farrel Dorn & Associates, of Chicago (Ellen J. O'Rourke and Daniel A. Popko, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Nancy Stamp, brought a personal injury action arising out of a motor vehicle accident and sought a new trial after the jury returned a verdict awarding damages for medical expenses but failing to make an award for pain and suffering or loss of a normal life. The circuit court granted plaintiff's motion for a new trial on pain and suffering, and loss of a normal life damages limited to the time period of six months following the accident. On appeal, plaintiff contends that the circuit court properly granted her a new trial on damages where the jury verdict was inconsistent given the objective evidence of pain and suffering presented at trial, but that the circuit court erred by restricting the amount of damages that could be presented at the new trial. Defendant maintains that the circuit court abused its discretion by granting the motion for a new damages trial where the evidence presented at trial was based on plaintiff's subjective complaints of

pain and suffering and there was no inherent inconsistency between the jury's awarding medical expenses and the jury refusing to award damages for pain and suffering. For the following reasons, we affirm.

## I. BACKGROUND

Following the motor vehicle accident, which occurred on May 24, 1996, defendant admitted liability and the case was tried before a jury on the issue of damages. At trial, plaintiff testified that on the date of the accident, she was driving her vehicle and stopped at a red light in Winnetka, Illinois. Plaintiff had her head turned to the right and was talking to her daughter when an automobile driven by defendant struck plaintiff's vehicle from behind. Plaintiff testified that she was thrust forward by the collision, then the side of her head hit the headrest. Plaintiff testified that after the impact, she experienced "extreme, lower back spasms," a headache, and stiffness in her neck. Plaintiff testified that she immediately contacted her internist, Dr. Starr, who advised her to take an ibuprofen, take hot showers, and rest. Plaintiff explained that it was a Friday afternoon and Dr. Starr did not have weekend office hours. Plaintiff testified that over the weekend, her lower back pain began to subside, but her neck soreness became more intense and she experienced more pain in her shoulder and arm. Plaintiff testified that she called Dr. Starr on that Monday and then went to his office for an appointment. Plaintiff testified that during her doctor's visit, she complained of stiffness and soreness in her neck which went down her left arm into her thumb and index finger. Plaintiff also informed her doctor that her head was hurting and that she was having trouble turning her neck. After Dr. Starr performed a physical examination and ordered MRIs, he referred plaintiff to Dr. Geri Gireesan, an orthopedic surgeon.

Plaintiff testified that she reported the same symptoms to Dr. Gireesan and Dr. Gireesan ordered physical therapy. Plaintiff testified that she received physical therapy, which included massage therapy and exercises, for three months. Plaintiff testified that she performed physical exercises that began slowly then increased in intensity. Plaintiff testified that the massage therapy was extremely intense and painful. Plaintiff testified that after three months of physical therapy, the pain was less extreme and the numbness in her fingers had stopped. Plaintiff testified that she still experienced pain down her arm, in her shoulder and neck, and headaches. Plaintiff testified that after the physical therapy, in September 1996, she had "plateaued" and she was told that continuing physical therapy would not improve her pain. Plaintiff testified that she, therefore, did not seek treatment for three years and continued to live with the pain.

Plaintiff testified that she never had any problems with her neck prior to the automobile accident. Plaintiff testified that prior to the collision, she was a very active person, who engaged in aerobic exercises and sports, including ice skating and tennis. Plaintiff testified that after the accident and physical therapy, she did not have strength in her hand and was unable to participate in sports activities. Plaintiff testified that she could not carry groceries or pull a suitcase. Plaintiff testified that her head hurt when she got a cold and her neck and arm would hurt when the weather was humid. Plaintiff also testified that she would experience pain when driving in a car on a bumpy road.

Plaintiff testified that three years after the accident, in 1999, the pain in her neck and tingling in her fingers intensified, and she scheduled an appointment with Dr. Gireesan. Dr. Gireesan instructed her on exercises to perform at home, but plaintiff testified that the pain continued. Plaintiff testified that she was subsequently prescribed medication and referred to a chiropractor. Plaintiff testified that she received treatment from the chiropractor, including physical therapy, electrical stimulation, and adjustments. Plaintiff testified that the pain continued and she experienced trouble walking. Plaintiff testified that she subsequently visited a pain specialist, Dr. Blonsky, where she received treatment including physical therapy and manipulation. Plaintiff testified that she received this treatment for six months to a year, which made her pain more tolerable.

Plaintiff testified that she suffers from digestive problems and experiences pain in her lower abdominal area, which occasionally prevents her from walking. Plaintiff testified that she is restricted in what she can eat. Plaintiff testified that she began having these problems in 2005, two years prior to her testimony.

Plaintiff testified that she continues to see a chiropractor two times a week due to her continued pain. Plaintiff testified that she can walk and participate in low-impact exercise, but that she cannot dance, horseback ride, or play tennis. Plaintiff testified that she cannot lift heavy packages or stand for long periods of time.

Dr. Joel Retsky testified that he treated plaintiff and diagnosed her with Crohn's disease of the small and large intestine. Dr. Retsky explained that Crohn's disease is an inflammatory condition of the intestinal tract, which can occur anywhere from the mouth down to the anal opening. Dr. Retsky testified that it is not established how Crohn's disease develops, but that it probably has to do with an overactive immune system and certain triggers that set it off. Dr. Retsky explained that it has to do with a predisposition where an individual has certain genes that make her likely to develop the disease. Dr.

Retsky testified that the generally accepted medical triggers for Crohn's disease for an individual who has a genetic susceptibility to it are smoking, gastrointestinal infection, and the use of nonsteroidal anti-inflammatory drugs (NSAIDs). Dr. Retsky testified that his opinion was that plaintiff's Crohn's disease was triggered by her taking NSAIDs after the automobile collision.

Dr. Russell Glantz, a neurologist, testified as defendant's medical expert in this case. Dr. Glantz testified that he reviewed plaintiff's physical therapy records, MRI reports, and medical records, including those from Dr. Starr, Dr. Gireesan and Dr. Blonsky. Dr. Glantz testified that his "opinion is that based on [plaintiff's] subjective reporting to the medical providers in the immediate time period after the accident in 1996 that she suffered a soft tissue injury to her neck and to her back as well, based on her reporting." Dr. Glantz also testified that "[t]he bigger issue or symptoms seemed to be in the neck. That soft tissue injury of the neck is also known as a whiplash injury, a cervical strain."

Dr. Glantz testified that he particularly relied upon the MRI films and reports, Dr. Gireesan's records, and the physical therapy records from Physical Therapy of North Shore because these records were written and documented plaintiff's symptoms during the few weeks after the automobile accident. Dr. Glantz testified that the records indicated that plaintiff first visited Dr. Gireesan on June 20, 1996, about one month after the accident. Dr. Glantz testified that Dr. Gireesan's significant findings were that plaintiff was seen because of pain in the neck and the lower back area following a rear-end automobile accident and that "when [Dr. Gireesan] examined her [he] didn't find anything wrong on her general examination." Dr. Glantz also noted the following regarding Dr. Gireesan's examination of plaintiff:

> "He found that the range of motion of [plaintiff's] neck, meaning when he asked her to move her neck forward, backwards, side to side was good without any discomfort. So she could move her neck around and didn't complain of pain. When he examined her strength in the upper and lower extremities, the strength was normal. So she didn't have any weakness. When he examined her sensation, he found that there was a loss of sensation in the left thumb and index area. He found that her reflexes were normal. Her straight leg raising test, which is a thing that examines for a lumbar problem, was normal. And those things were important to me in [Dr. Gireesan's] examination in the sense that he didn't find any significant abnormalities on her examination except for the reduced sensation in the left hand and that her neck wasn't painful."

Dr. Glantz further noted that Dr. Gireesan indicated that plaintiff was "in no acute distress." Dr. Glantz testified that Dr. Gireesan ordered physical therapy for plaintiff, which is done for patients who have "soft tissue injuries." Dr. Glantz testified that because plaintiff complained of some back symptoms, Dr. Gireesan also recommended "a lumbar stabilization program, which is pretty standard."

Dr. Glantz testified that the physical therapy reports indicate that plaintiff was referred for "treatment of her lumbar and cervical disc disease." Dr. Glantz testified that during therapy, plaintiff continued to complain of pain in both thumbs and plaintiff stated that the pain had decreased in intensity. Dr. Glantz testified that there were significant aspects of the physical therapy records from Physical Therapy North Shore that he relied upon in reaching his conclusion that plaintiff had whiplash from the automobile accident. Dr. Glantz testified that it was significant that the records indicated that plaintiff made good improvements with physical therapy a few months after her accident, "which is something that one sees and expects with a soft tissue injury of the cervical or lumbar area because soft tissue injuries are self-limiting."

Dr. Glantz testified that he also relied on the histories that plaintiff gave as a patient during physical therapy sessions because it provides an idea of what was going on with the patient at the time. The report for July 8, 1996, indicated that plaintiff drove for six hours and "her neck and back were really bad" and she had back spasms. The record indicated that, with exercises, plaintiff improved.

Dr. Glantz testified that on July 24, 1996, plaintiff reported that she was sore and that she thought it was due to stress. The reports also indicated that on July 31, 1996, the therapist planned to place plaintiff on "hiatus," or a gap, while plaintiff was on vacation. The therapist's records for August 20, 1996, when plaintiff returned from vacation, indicated that plaintiff told the therapist that "she went on some amusement park rides with her kids, not really bad ones, but also drove for six hours. And her neck had been more sore, and her thumbs were not bad."

Dr. Glantz testified with respect to the significance of these histories, as follows:

"Well, the significance—one of them I've already stated—was that by July 31 the therapist already noted that [plaintiff] made good improvement. As I said, that's consistent with a soft tissue muscle injury. And the other thing is—and all those things that you just asked me point to a fairly high level of functioning that [plaintiff] was having at that time. She was driving for six hours. She went on amusement park rides. She could swim and so forth."

Dr. Glantz also testified that his opinion was that plaintiff did not have a cervical disc injury at the time of the automobile accident. Dr. Glantz testified that when the MRI report was done on June 4, 1996, there was no evidence of acute focal disc herniation at any level. Dr. Glantz testified that the only thing present was arthritis, which takes years to develop. Dr. Glantz testified that the MRIs and medical findings in 2002 and 2004 where essentially unchanged. Dr. Glantz testified that there was never a disc herniation, just a bulge in a disc that was there in 1996 and slightly more prominent in 2004.

Dr. Glantz testified that plaintiff visited Dr. Gireesan on December 23, 1999, and Dr. Gireesan diagnosed her with discogenic neck pain, which referred to pain coming from a disc. Dr. Gireesan also diagnosed plaintiff with myofascial syndrome, which meant that plaintiff had complaints of pain that related to her muscles. Dr. Gireesan's treatment plan included neck and shoulder strengthening exercises and modifying the way plaintiff read. Dr. Glantz testified that while plaintiff had a cervical sprain with some numbness in her left hand, the records indicated that by 1999, that numbness was gone.

Dr. Glantz concluded that based upon a reasonable degree of medical certainty, plaintiff's soft tissue injury to her neck would have healed by approximately six months. Dr. Glantz testified that the basis of his opinion was that plaintiff's injury was only a soft tissue injury and she did not suffer a herniated disc or fracture her bone. Dr. Glantz also noted that "most of the time muscle sprains will heal in six weeks, but some people take longer. And I'm giving her as much as six months to heal." Dr. Glantz further testified that plaintiff's complaints after the six-month period were related to the fact that she had degenerative arthritis in her neck, between bones C5 and C6 and bones C6 and C7, that will occasionally flare up.

Following this testimony, the jury returned a verdict for plaintiff for past medical expenses in the amount of $4,348. The jury awarded zero damages for pain and suffering or loss of a normal life. Plaintiff filed a motion for a new trial on damages alleging that the failure of the jury to include an award for pain and suffering or the loss of a normal life invalidated the verdict. In a four-page written order, the circuit court found that the objective evidence supported an award for pain and suffering and loss of normal life for a period of six months after the automobile accident. The circuit court, therefore, granted a new trial solely as to the amount of pain and suffering and loss of a normal life damages limited to the six-month period from the date of the accident, May 24, 1996, through November 24, 1996. The court determined that the award of medical expenses in the amount of $4,348 would stand. Plaintiff now appeals.

## II. ANALYSIS

This court granted plaintiff's petition for leave to appeal from the circuit court's order granting, in part, a new trial on pain and suffering and loss of normal life damages only. While neither party appealed the issue of whether the circuit court's grant of a new trial on damages itself was proper, both parties have presented arguments to this court with respect to this issue. We note that Supreme Court Rule 306(a)(1) (210 Ill. 2d R. 306(a)(1)) provides the means to obtain an interlocutory appeal from a circuit court's order granting a new trial. Under the rule, when a petition for leave to appeal is allowed, the scope of review by the appellate court is not confined to the propriety of the circuit court's order granting the new trial. Rather, this court may review all the rulings of the lower court. See *Bishop v. Baz*, 215 Ill. App. 3d 976, 984 (1991). Accordingly, we first consider whether the circuit court abused its discretion in granting plaintiff a new trial on pain and suffering, and loss of normal life damages.

A reviewing court will reverse a trial court's ruling on a posttrial motion for a new trial only if the trial court abused its discretion. *Dixon v. Union Pacific R.R. Co.*, 383 Ill. App. 3d 453, 470 (2008), citing *Snover v. McGraw*, 172 Ill. 2d 438, 449 (1996). " 'In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence.' " *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1028 (2005), quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 455-56 (1992). In making this determination, " 'it is important to keep in mind that " '[t]he presiding judge in passing upon the motion for a new trial has the benefit of his previous observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility.' " [Citation.]' " *Stift*, 362 Ill. App. 3d at 1028, quoting *Maple*, 151 Ill. 2d at 456. " 'If the trial judge, in the exercise of his discretion, finds that the verdict is against the manifest weight of the evidence, he should grant a new trial ***.' " *Stift*, 362 Ill. App. 3d at 1028, quoting *Maple*, 151 Ill. 2d at 456. " 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any evidence.' " *Stift*, 362 Ill. App. 3d at 1028, quoting *Maple*, 151 Ill. 2d at 454.

Furthermore, the determination of damages is a question of fact, not law, and is within the discretion of the jury, not the court. *Poliszczuk v. Winkler*, 387 Ill. App. 3d 474, 490 (2008), citing *Snover*, 172 Ill. 2d at 447. Our supreme court has held that a jury's award of damages is entitled to substantial deference by the court and a trial court can upset a jury's award of damages only if it finds that: (1) the

jury ignored a proven element of damages; (2) the verdict resulted from passion or prejudice; or (3) the award bore no reasonable relationship to the loss sustained. *Snover*, 172 Ill. 2d at 447.

Plaintiff argues that she was properly awarded a new trial on damages because the jury's verdict awarding nothing for pain and suffering or for loss of a normal life ignored the objective proof of injury presented at trial. Defendant relies on our supreme court's decision in *Snover*, 172 Ill. 2d 438, in arguing that the jury's verdict was reasonable where plaintiff did not establish that she had any significant, objective symptoms of injury after the automobile accident.

In *Snover*, our supreme court held that a jury may award pain-related medical expenses and may also determine that the evidence of pain and suffering was insufficient to support a jury award. *Snover*, 172 Ill. 2d at 448. The court noted that the determination of damages was within the discretion of the jury and that an award for pain and suffering was especially difficult to quantify. *Snover*, 172 Ill. 2d at 448. In *Snover*, the plaintiff had almost no objective symptoms of pain, returned to school after a few days, and was able to play tennis every day thereafter. In that case, the plaintiff complained of abdominal pain immediately after an automobile accident, but emergency room physicians found no apparent bruising or swelling. Plaintiff's X rays proved negative, a CAT scan showed no sign of head injury, she had a full range of motion, and she made no complaints of neck pain. *Snover*, 172 Ill. 2d at 441-43. The expert testimony as to plaintiff's injuries was in conflict, and there was no suggestion of mistake, confusion, partiality, or prejudice on the part of the jury. *Snover*, 172 Ill. 2d at 442-43. The jury awarded damages for medical bills incurred from the date of the accident through plaintiff's initial therapy sessions, and it awarded limited damages for out-of-pocket medical expenses. *Snover*, 172 Ill. 2d at 443. Between the accident and trial, the plaintiff had been involved in two subsequent car accidents and had suffered a weight lifting injury. *Snover*, 172 Ill. 2d at 442. The court found that the jury was well within the confines of the evidence in concluding that the plaintiff suffered only minimal discomfort which was not compensable. *Snover*, 172 Ill. 2d at 449.

In reaching its decision, our supreme court in *Snover* emphasized that, in other cases, an award of medical expenses without a corresponding award for pain and suffering might be inappropriate. *Snover*, 172 Ill. 2d at 449. The court noted that if the evidence clearly indicates that the plaintiff suffered serious injury, a verdict for medical expenses alone could be inconsistent and that this determination is best made by the trial court in a posttrial motion. *Snover*, 172 Ill. 2d at 449. In making this determination, the trial court "should consider

the distinction between subjective complaints of injury and objective symptoms." *Snover*, 172 Ill. 2d at 449. Our supreme court concluded that "[i]n cases in which a plaintiff's evidence of injury is primarily subjective in nature and not accompanied by objective symptoms, the jury may choose to disbelieve the plaintiff's testimony as to pain. In such a circumstance, the jury may reasonably find the plaintiff's evidence of pain and suffering to be unconvincing." *Snover*, 172 Ill. 2d at 449.

In this case, unlike *Snover*, the evidence at trial included objective symptoms of plaintiff's injury. Defendant's expert, Dr. Glantz found that plaintiff had a soft tissue injury to her neck and back that would heal in approximately six months and an aggravation of a preexisting condition, namely, arthritis in her neck. While defendant notes that Dr. Glantz stated that his opinion was partially based on plaintiff's "subjective reporting to the medical providers in the immediate time period after the accident," Dr. Glantz testified that he also relied upon MRI films and reports, Dr. Gireesan's records, and physical therapy records from Physical Therapy of North Shore. Dr. Glantz testified regarding certain objective findings made by plaintiff's physicians, including that Dr. Gireesan found that plaintiff had a cervical sprain with a loss of sensation in the left thumb and index area. Dr. Glantz also testified that plaintiff's physical therapy reports indicated that plaintiff had a decreased range of motion in her lumbar and cervical disc areas. Dr. Glantz noted that the physical therapy records indicated that plaintiff continued to have pain in both thumbs, but that the pain had decreased in intensity.

While plaintiff testified about the pain she suffered following the accident, her treatment, and the restrictions on her normal life, the jury was free to make its own credibility determinations and reject or accept plaintiff's testimony. *Snover*, 172 Ill. 2d at 448 ("The jury determine[d] the credibility of the witnesses and the weight to be given their testimony"). In addition, we note that defense counsel, during closing argument, conceded that plaintiff had pain and suffering for a period of six months, and offered his evaluation as to its damage value. The record shows that defense counsel argued as follows:

> "Now, we do disagree with the plaintiff on the value of this case, and I would suggest to you that the evidence in this case supports a whiplash case, and not a very good one. So what I would suggest to you is in the medical expenses that they are going to tender to you, you'll see that break out of the medical expenses for the first six months after the accident. And the first six months is $4,348. I think you should consider giving her that bill for the first six

months. And then I would suggest to you that on the issue of pain and suffering that $5,000 would be more than generous. You might think it's worth less, you might think it's worth more; but that's how different we see this case. I don't believe that there is a loss of normal life. And I believe that if she does have future expenses in this case, future expenses in her life, those are related to conditions that have absolutely nothing to do with this accident. So you can see we see this case as a totally different case, a totally different case. They think it's worth 2.3 million. And I'm suggesting to you this is no more than a whiplash case that's worth about $10,000.''

Defense counsel's statements did not constitute a clear, unequivocal statement about a concrete fact within that party's particular knowledge, which is the standard for a judicial admission. See *McNamee v. Sandore*, 373 Ill. App. 3d 636, 650 (2007). Rather, defense counsel's statements were merely an opinion or suggestion which the jury was free to accept or disregard.

However, the uncontroverted evidence was that plaintiff suffered a soft tissue injury to her neck and back that would heal in approximately six months. An award of zero damages for pain and suffering for a six-month period, along with an award of medical expenses for the same six-month period, ignores a proven element of damages that the jury was not free to disregard. Therefore, the circuit court's determination, granting a new damages trial, was not an abuse of discretion where the jury's verdict was irreconcilably inconsistent.

Plaintiff argues that the circuit court erred by restricting the amount of damages that could be presented at the new trial to the six-month period following the accident.

In this case, plaintiff introduced into evidence a summary of medical bills which was broken down into the following three components:

(1) Medical bills for the six months after the accident—$4,348;

(2) Medical bills after six months, if the jury felt the injury lasted longer than six months—$22,936.50; and

(3) If the jury found the Crohn's disease was related to the accident, an additional $28,423.33 in medical bills.

The jury obviously found plaintiff's injuries and damages only lasted for six months and awarded plaintiff medical expenses of $4,348. The circuit court determined that this award was not against the manifest weight of the evidence and plaintiff does not raise such an argument on appeal. The only inconsistency in the verdict, therefore, was the failure to award pain and suffering, and loss of a normal life damages for a period of six months.

Plaintiff asserts that she was unable to locate a single case to support the circuit court's remand for a limited trial on damages. However, in *Dixon*, 383 Ill. App. 3d at 472-73, this court determined

that the jury's damages verdict awarding a railroad employee $131,318.66 for pain and suffering and $54,500 for economic loss, but nothing for disability, ignored a proven element of damages. This court noted that the undisputed evidence was that plaintiff was disabled for a certain period of time after his accident. This court affirmed the awards for pain and suffering and economic loss, and remanded for a new trial solely on the disability element of damages. See *Dixon*, 383 Ill. App. 3d at 473. In remanding for a new trial on just one element of damages, this court relied on our supreme court's determination in *Dillon v. Evanston Hospital*, 199 Ill. 2d 483 (2002).

In *Dillon*, the jury awarded the plaintiff $1.5 million for past pain and suffering, $1.5 million for future pain and suffering, and $500,000 for the increased risk of future injuries. *Dillon*, 199 Ill. 2d at 488-89. Our supreme court determined that the jury instruction on increased risk was inadequate, and "remand[ed] the cause to the trial court for a new trial solely on that element of damages." *Dillon*, 199 Ill. 2d at 508.

Also, in *Mikolajczyk v. Ford Motor Co.*, 374 Ill. App. 3d 646, 675-76 (2007), *reversed on other grounds*, *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516 (2008), this court found that the jury's loss of society award, to a widow of a driver killed when his vehicle was struck from behind, of $25 million was excessive. This court noted that there was sufficient evidence presented at trial to support a loss of society award and that all of the defendants' contentions of trial error were without merit. *Mikolajczyk*, 374 Ill. App. 3d at 676. Therefore, this court remanded the case to the circuit court for a hearing to determine the appropriate amount of remittitur. *Mikolajczyk*, 374 Ill. App. 3d at 676. This court explained that after the remittitur amount is set by the circuit court, if the plaintiff does not consent to the reduced award within a reasonable time period as set by the circuit court, then the circuit court shall order a new trial between the parties on the issue of the amount of loss of society damages only. *Mikolajczyk*, 374 Ill. App. 3d at 676.

Following this precedent, we find that the circuit court properly remanded for a new trial on just the elements of damages pertaining to pain and suffering, and loss of a normal life. In the present case, the uncontroverted evidence was that plaintiff suffered from a soft tissue injury for a six-month period. In fact, the jury awarded medical expenses limited to this six-month time period. Therefore, the circuit court's remand was appropriately limited to the period of six months from the date of plaintiff's accident where there was sufficient evidence presented at trial to support an award for damages pertaining to pain and suffering, and loss of a normal life, for that time period.

Plaintiff, nonetheless, cites *Garley v. Columbia LaGrange Hospital*, 377 Ill. App. 3d 678 (2007) (*Garley II*), in support of her argument that because the jury's verdict was inconsistent, the circuit court could not enforce part of the verdict and place limitations on the new damages trial. In *Garley II*, the plaintiff filed a wrongful death action against the hospital and two doctors after his wife died from a pulmonary embolism following abdominal surgeries. The plaintiff was awarded damages against the hospital and one doctor pursuant to a jury verdict, and the judgment was reversed by this court after the hospital appealed and the case was remanded for a new trial. *Garley II*, 377 Ill. App. 3d at 679-80. On remand, the circuit court certified questions of law for appeal. In answering the first certified question, this court concluded that both doctors were parties in the retrial, even though they did not appeal from the judgment entered on the jury verdict in the first trial. This court noted that the doctors and the plaintiff agreed in a pretrial "high-low" settlement that, if the case was reversed and remanded on appeal, the settlement would be void and the doctors would be parties in the retrial. *Garley II*, 377 Ill. App. 3d at 682. This court also noted that in its previous mandate, it stated " 'we reverse and remand this matter for a new trial consistent with the views expressed herein.' " *Garley II*, 377 Ill. App. 3d at 382, quoting *Garley v. Columbia LaGrange Memorial Hospital*, 351 Ill. App. 3d 398, 413 (2004) (*Garley I*). This court explained that nowhere in its opinion did it limit reversal of the matter to the hospital alone. *Garley II*, 377 Ill. App. 3d at 682. This court further explained that " '[i]n Illinois, a reversal abrogate[d] the decree and leaves the cause [of action] as it stood prior to its entry, restoring the parties to their original positions.' " *Garley II*, 377 Ill. App. 3d at 682, quoting *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 859 (2000). Therefore, this court concluded that the reversal placed plaintiff, the hospital, and the doctors back in the same position prior to the jury's verdict. *Garley II*, 377 Ill. App. 3d at 682.

With respect to the second certified question in *Garley II*, this court concluded that since there was no final judgment in the case, the doctrine of collateral estoppel did not limit the issue of damages to the amount of the original judgment that was vacated by this court. *Garley II*, 377 Ill. App. 3d at 683. This court explained that since this court reversed the judgment and remanded the case for further proceedings in *Garley I*, the judgment of the circuit court was not a final judgment on the merits for purposes of collateral estoppel. *Garley II*, 377 Ill. App. 3d at 683.

Unlike *Garley II*, the present case does not involve a reversal on appeal that would restore the parties to their original positions.

Plaintiff in this case is not limited to damages by an original judgment that was vacated by this court. Rather, the circuit court determined that the jury's verdict was fatally inconsistent only as it pertained to the failure to award pain and suffering, and loss of a normal life damages for a period of six months. We note that while the circuit court limited the time period during which the jury at retrial was to consider the amount of damages to six months, the circuit court did not set any limit on the amount of damages that could be awarded. As previously discussed, pursuant to this court's determinations in *Mikolajczyk*, 374 Ill. App. 3d at 676, and *Dixon*, 383 Ill. App. 3d at 472-73, and our supreme court's holding in *Dillon*, 199 Ill. 2d at 508, the circuit court properly remanded this case for a new trial on just these elements of damages.

For the above reasons, we find no abuse of discretion by the circuit court in granting a new trial solely as to the amount of pain and suffering, and loss of a normal life damages limited to a period of six months from the date of plaintiff's accident.

Affirmed.

MURPHY, P.J., and THEIS, J., concur.